## SPENCER VS. MAXFIELD.

Where a party has given his obligation for the payment of a sum of money by a certain day, with interest at a higher rate than that allowed by law, in the absence of any agreement on the subject, such higher rate of interest will contine not only until the money is due, but so long as it is held or detained by the debtor, though such obligation is entirely silent as to the rate of interest after its maturity.

After this cause was decided, *ante*, 178, a motion was made and argued for a re-hearing, and the following opinion was given thereon.

*E. Mariner*, for motion.

*J. M. Gillett, contra.*

*By the Court*, PAINE, J.   On a motion for a re-hearing the counsel for the appellant insists so strenuously that we have not only decided contrary to the presumptions of fact, but also contrary to the well settled law upon the subject, that we have deemed it proper to state somewhat more fully the grounds of our opinion, and our views upon the authorities referred to.   As to the intention of the parties, fairly to be derived from the contract they made, there is no room for doubt.   They contracted with knowledge of the law.   They knew that in the absence of any agreement on the subject the law fixed the rate of interest at *seven per cent.*   They knew that the same law allowed the parties to contract for a rate as high as twelve.   In this case the lender refused to loan his money

for seven per cent. and expressly contracted for twelve. True, he did not say expressly, that if not paid at maturity the same rate should continue. But it is impossible to say that a lender insisting on twelve per cent. before maturity, did not intend that if there was a default, the same rate should be paid after. It is entirely impossible to say, that a borrower consenting to pay twelve per cent. before maturity, did not expect to pay the' same after. And although such a provision is not expressed, it is clearly implied that the borrower should not by violating his contract, either destroy its existence or obligation, or relieve himself from any stipulations beneficial to the other party. The appellant's counsel assumes, that because nothing is said in the contract about the payment of interest after maturity, it cannot reasonably be held to imply anything on that subject. But such certainly is not the rule in respect to other provisions of contracts. They continue in full force after the time stipulated for performance, against the party in default. Take this note for example. The maker promised to pay the principal on a day certain. There was nothing said about paying it afterwards, in case it was not then paid. But no one would say that the contract did not require him to pay after a default; yet according to the technical reasoning of the appellant, that result would follow. There would be a right of action for the breach of the contract on the day of maturity, but no contract remaining in force requiring the maker to pay after maturity. Yet it is well understood that negotiable notes remain negotiable after maturity, transferable by endorsement or delivery as before. Parties making such transfers are not supposed to assign merely rights of action for a former breach of contract, but to transfer the contracts themselves, still in full force as promises to pay. And this is upon the assumption that the clear implication from all such contracts is, that if payment is not made on the day fixed, it shall nevertheless be made afterwards. But if this is so in respect to the promise to pay the principal, why not equally so

in respect to the promise to pay the interest? If the law says that the promise to pay the principal continues in force as a contract after default, it must say that the contract to pay interest continues equally in force. And it is the very nature of a promise to pay interest, that it becomes attendant upon the main promise to pay the principal, and with it the promise for interest would include all the time during which the main promise was in force, as well after as before maturity, wherever it appeared from the whole contract that such was the intention of the parties. And that such was their intention in every instance where they contracted for a higher rate than the law would otherwise fix, is, as already shown, too plain to admit of a moment's doubt; and in connection with this position it is proper to consider a class of authorities on which the appellant relies, but which we do not consider in conflict at all with our conclusion. These are cases where it has been held that where the parties had contracted for a rate of interest *less* than the law would fix, that the debtor after default should pay the legal rate, and that the contract did not carry the less rate beyond maturity. The appellant infers from this, that the contract for interest never extends beyond maturity, unless expressly so stated in the contract itself. But that conclusion is not warranted either by these authorities or by reason. It must be borne in mind that the thing to be ascertained, is the intention of the parties; looking then at a contract where the interest is fixed at a less rate that the law would otherwise give, it is seen at once, that this stipulation is for the benefit of the borrower and prejudicial to the lender. The latter having provided for the re-payment of his principal at a day certain, has consented to a reduction of the legal rate of interest until that time. But although if there is a default at maturity, the contract to repay the principal still remains in force as an implied promise to pay subsequently ; yet the very nature of the stipulation in respect to interest, excludes any implication that the lender intended to consent to a reduction below the legal

rate for any longer time than that expressly provided for, or that the borrower could have expected by his own voluntary violation of his contract, to enable himself, to enforce against the lender the stipulated reduction beyond the time mentioned in the contract. Hence this class of cases may properly hold that such contracts do not extend the reduced rate beyond maturity. Not merely because nothing was said about it in the contract, but because of that and the additional reason that the nature of the stipulation itself, excludes the idea that such was the intention of the parties. But where the character of the contract is reversed this conclusion can no longer be supported; and it is directly reversed when the rate of interest fixed by the contract, is greater than the law would otherwise fix.

The stipulation is then beneficial to the lender, and prejudicial to the borrower. And having contracted in that way before maturity, although nothing is said about a default in the contract, the conclusion is irresistible that both parties must have intended that the same implication which would carry forward the promise to pay the principal after maturity, should carry with it the promise to pay the interest, and that the borrower should not by a breach of his contract relieve himself from any stipulation beneficial to the other party. The same reasoning which in the one class of cases says that the borrower shall not by default, entitle himself to enforce against the lender the reduced rate beyond the time stipulated for, goes to show that in the other he should not by his default, relieve himself from the higher rate contracted for before maturity. The two conclusions are not at all contradictory, but both rest upon the plainly implied intention of the parties, as derived from the nature and object of their stipulations.

Holding this view of all cases belonging to the class referred to, it is unnecessary to notice them in detail.

The case of *Macombe vs. Dunham*, 8 Wend., 550, cannot be regarded as in conflict with the foregoing views. It was a de-

cision upon a charter so peculiar, and of which so strange an application was attempted to be made, that it can hardly be said to be a case in point either way.

The case of *Brewster vs. Wakefield*, 22 How., 118, might seem at first sight an adjudication directly against us. But there is one very material distinction between our law and the law of Minnesota, upon which that decision was made, which we think should prevent an application here of the principles which seemed to govern in that case. The law of Minnesota fixed the rate of interest in the absence of any agreement on the matter, at seven per cent., but contained no prohibition against any rate which the parties chose to contract for. Under such a law, if parties should make a really exorbitant, unconscionable contract, a court of equity might be justified in applying the doctrine of strict construction, and to avoid injustice; holding that the parties intended nothing except what was clearly expressed. That the decision in *Brewster vs. Wakefield* was made upon that principle, is evident from the following extract, commencing on page 128: The court says, "nor is there anything in the character of this contract that should induce the court, *by supposed intendment of the parties*, or doubtful inferences, to extend the stipulation for interest beyond the time specified in the written contract. The law of Minnesota has fixed seven per cent. *per annum* as a reasonable and fair compensation for the use of money; and where a party desires to exact from the necessities of a borrower more than three times as much as the legislature deems reasonable and just, he must take care that the contract is written in plain and unambiguous terms; *for with such a claim he must stand upon his bond.*" This passage very clearly reveals, that the court saw that "the intendment of the parties" to such a contract, was that its stipulations should continue until performance, though not performed at maturity. But by reason of its inequitable character, they refused to give effect to that intention, by standing upon the letter of the bond.

But the statute of this state, by which our decision is to be governed, while fixing seven per cent. in the absence of a contract, did not leave the parties full liberty to contract for any rate, but prohibited any contract for more than twelve per cent. By such a law, the legislature as clearly expresses its determination that a contract for twelve per cent. may be just and reasonable, or that seven per cent. is a just rate, as a general rule. No court would be at liberty, therefore, to say of such a contract that it was unjust or unreasonable, or to refuse to give effect to the obvious intention of the parties, as they would in other contracts, upon any such doctrine of strict construction as was applied in the case under consideration. We think, therefore, that the case of *Brewster vs. Wakefield* not only substantially confirms our views as to the real intention of such a contract, but that the principle upon which it refused to give effect to that intention cannot be applied to a contract like this.

We will only add that since the original decision of this case, we have met with a very recent decision of the supreme court of Illinois, sustaining our conclusion. *Etnyre vs. McDaniel*, 28 Ill., 201; that case also cites *Phinney vs. Robinson*, 16 Ill., 108; *Hopkins vs. Crittenden*, 10 Tex. 189, and *Kohle vs. Smith*, 2 Cal., 597; all of which decide in the same way.

These cases and the considerations herein presented, prevent us from feeling that our decision is so much at war with all the law and reason upon the subject, as the counsel for the appellant seems to think it.

The motion for a rehearing is denied.