Hand v. Armstrong.

## HAND v. ARMSTRONG.

1. **Promissory note: INTEREST.** A note was in the following form: "One year after date I promise to pay J. H. two thousand dollars, with interest at ten per cent per annum." *Held*, that the payee was entitled to interest thereon *after* as well as before maturity, at ten per cent per annum.

*Appeal from Dubuque District Court.*

WEDNESDAY, APRIL 12.

THE facts are sufficiently stated in the opinion of the Court.

*Harvey* for the appellant.

*Doud* for the appellee.

Hand v. Armstrong.

Lowe, J. — The action is founded upon the following

1. Promissory note:
NOTE: inter-
est.
"MARCH 1st, 1863.

"One year after date, I promise to pay to John.Hand two thousand dollars, with interest at ten per cent per annum.

(Signed), WILLIAM ARMSTRONG."

The defense set up, was, that of payment in full of the principal and the interest due thereon.

At the trial it was shown and admitted, that on the 1st day of March, 1865, the defendant paid plaintiff $2,320, which covered the principal and 10 per cent interest thereon for the first year, and six per cent interest for the second year. The court held, that the defense was sustained; construing the note to draw ten per cent interest from its date to its maturity, and only six per cent thereafter; against the objection of the plaintiff, who insisted that the true construction of the contract would give him ten per cent thereon until the same was paid, which would entitle him to $88 at the time the cause was tried, in addition to the above payment of $2,320. Our attention is invited to the following cases of authorities, supporting the ruling below: *Macomber* v. *Dunham*, 8 W.end., 550; *United States Bank* v. *Chapin*, 9 Id., 471; *Ludwich* v. *Hordsinger*, 5 Watts & Serg., 51–60; *Kitchen* v. *Branch Bank of Mobile*, 14 Ala., 233; *Brewster* v. *Wakefield*, 22 How. (U. S.), 118.

This last reference is, perhaps, the most pointed and authoritative of the list, and places the decision upon the general ground that, when the rate of interest reserved in the note is higher than that fixed by law, the stipulation to pay the higher rate, from motives of public policy, should not be construed to extend any further than the period designated in the contract for the payment of the debt or principal; in other words, that the conventional interest agreed upon between the parties, being other than the legal interest regulated by statute, should be, and is, qualified

and limited by the particular time therein specified for its payment, unless there was something expressed upon the face of the note showing a different intention, namely, that the agreed rate of interest was to continue until the principal debt was paid, &c. Now, whilst this reasoning possesses the semblance of truth, and its force is sensibly felt by us, we nevertheless cannot overlook the circumstances under which the note in question was given, and which, we think, indicate but too clearly the intention of the parties to extend the stipulation for interest beyond the time specified for the maturity of the note. It seems to us like other contracts; if it is ambiguous upon the point in question, the intention of the parties should have much weight in its construction. In agreeing upon a rate of interest different from the legal interest established by law, what did the parties, under the circumstances, contemplate? That the conventional interest should cease at the maturity, or when the note should be paid? We conclude, without much doubt, that it must have been the latter, for the reasons — *First.* That, inasmuch as the object of the stipulated interest was obviously to pay for the use or forbearance of the money, the natural import or construction of the contract would be, that, as long as its *use* was granted on the one hand, and the payment thereof delayed on the other, the agreed rate of interest should run. *Second.* Because such has been the uniform practice and understanding of the courts of this State, so far as we are advised (the question before at least not having been raised in this court), and in the business circles thereof. *Third.* Because this construction has received a sort of legislative sanction by the act which authorizes the judgment obtained upon this description of contract to draw the same interest expressed upon its face, provided it does not exceed ten per cent; and that is the rate of interest of the note before us. We can hardly conceive that the parties to this instru-

ment intended to make a contract the effect of which, by implication, was to be at variance with the commercial, legislative and judicial construction for nearly a quarter of a century.

These general views will be found supported by the following authorities: Revision, § 1787; *Kilgore* v. *Powers*, 5 Blackf., 22; *Kaler* v. *Smith*, 2 Cal., 597; *Morgan* v. *Jones*, 20 Eng. L. & Eq., 454; *Hopkins* v. *Crittenden*, 10 Texas, 189; *Bridges* v. *Andrews*, 7 Id., 461; *Lester* v. *Bank of Mobile*, 7 Ala., 490; *Payne* v. *Clark*, 23 Mo., 259; *Phinney* v. *Baldwin*, 16 Ill., 108.

In reply to the argument that extravagant rates of interest should be discouraged, and that all such contracts should be rigidly construed, we say that, if a party seeking to enforce the same in a court of justice demands the pound of flesh, he can be prevented from getting any *blood* by the plea of usury.

Believing that there is no call or reason for changing the legal construction of such contract, the judgment will be reversed and the cause remanded.

Reversed.