FIRST ECCLESIASTICAL SOCIETY OF SUFFIELD *vs.* BURDETT LOOMIS.

In the year 1869 the defendant executed a note to the plaintiffs payable in three years with interest at the rate of seven-thirty per cent. The statute then in force provided that where interest was reserved at a higher rate than six per cent. the contract should be void so far as related to interest. In 1872 an act was passed "validating and confirming" usurious contracts and providing that they might "be enforced." In 1873 the act of 1872 was repealed. Held that the contract was validated by the act of 1872 and that the act of 1873 could not invalidate it, and that the plaintiffs were therefore entitled to recover the stipulated interest. [Two judges dissenting.]

And held that after the note was due, the interest allowed as damages must be according to the statute rate during the time for which it was allowed.

ASSUMPSIT upon a note; brought to the Superior Court in Hartford County. Facts found and case reserved for advice. The case is sufficiently stated in the opinion.

*E. Hall* and *E. S. White*, for the plaintiffs.

The question is—did the repeal of the validating act of 1872 revive the penalty as to contracts once usurious and invalid, but subsequently validated and confirmed by the legislature? By the validating act of 1872 the contract became as sacred and binding as any other legal obligation, and as valid as though no prohibitory statute had existed at its inception. The impairment of such a contract is prohib-

ited by the Constitution of the United States. Art. 1, Sec. 10. Again, the statute of 1873 is retrospective. Such legislation can only be sustained when its operation is just and equitable. *Welch* v. *Wadsworth*, 30 Conn., 149; *Goshen* v. *Stonington*, 4 Conn., 209; Cooley's Const. Lim., 370–379. A wide distinction exists between a validating act which adds a legal sanction to a moral and equitable obligation, and an invalidating act which takes away a legal obligation from a valid and binding contract.

*F. Fellowes* and *C. E. Fellowes*, for the defendant.

The confirming act is in effect nothing more than a repeal of the statute of 1866. It is so regarded by Judge Butler in the opinion in *Welch* v. *Wadsworth*, 30 Conn., 158. It is too elementary a principle to need the citation of authorities, that the repeal of a repealing statute revives the original statute. This principle must apply to this case, unless, as the plaintiff claims, the repeal of the confirming act is unconstitutional as impairing the obligation of the contract, or inoperative as destroying some vested rights. Is either claim of the plaintiff correct? In order to answer this question we must inquire what obligations are imposed and what rights created by the confirming act. And in order to answer this question we must go back a step further, and inquire what were the obligations and rights of the parties under the contract, and the law as it was at the time of its execution. These questions are fully answered in *Welch* v. *Wadsworth*, 30 Conn., 149. The result of that case is, that the right of the borrower to avoid the payment of interest by pleading usury in defence to the action, being in the nature of a penalty imposed upon the lender for a violation of law, is not such a vested right that it cannot be modified or destroyed by subsequent legislation; that the rights and obligations of the parties in this respect are purely statutory, and are held subject to the will of the legislature. In short, the court hold that the whole matter is one of *pure legislation*, and involves no question of vested rights. If, then, the whole matter is within the control of the legislature, and what is given by one statute

may be taken away by another, why may not what has been given and taken away be afterward restored by still another statute, as in this case by the repeal of the confirming act? See *Johnson* v. *Meeker*, 1 Wis., 436; *Gilleland* v. *Schuyler*, 9 Kansas, 569. Courts will hesitate to declare an act of the legislature unconstitutional or inoperative, and will not do so except upon the strongest reason. We submit, then, that the plaintiff is entitled to recover no interest until the maturity of the note.

After the maturity of the note, on the authority of *Fisher* v. *Bidwell*, 27 Conn., 375, the plaintiff must probably recover damages for the detention of the money. But these damages must be computed at the rate of six per cent., the legal rate of interest when the note was given.

PARDEE, J. On the 10th day of December, 1869, the defendant executed and delivered to the plaintiffs his promissory note for $2,500 payable three years from date, with semi-annual interest at the rate of $7\frac{3}{10}$ per cent. per annum. The then existing statute of usury affected that part of this contract which concerns the payment of interest, avoiding the plaintiffs' right to demand, and the defendant's legal duty to pay it.

But although this part of the contract could not be enforced at the time of its inception, there yet remained upon him an equitable and moral obligation to pay the principal of the debt with at least the lawful interest; and, presumably, when he made the promise by which he retained and made profitable use of the plaintiffs' money, he intended to fulfil it.

This privilege of refusing to pay any interest he held subject to such action by the legislature as would modify and even destroy it, and thereby validate the original contract to the fullest extent and in all its parts.

In 1872 an act was passed which declared that usurious contracts were thereby "validated and confirmed," and provided that they might " be enforced, any law to the contrary notwithstanding." As we have intimated, in thus compelling him to pay the legal rate of interest the legislature provided

First Ecclesiastical Society of Suffield *v.* Loomis.

for the enforcement at law of that which was before an equitable and moral obligation; and there can be found enough of justice and reason to justify the statute in compelling him to pay the promised excess beyond that rate.

In numerous instances legislatures have passed and courts have sustained confirming acts designed to rectify mistakes, supply accidental omissions, remove legal impediments to the enforcement of contracts, establish defective deeds and make them operative to convey titles, and to bind a party to a contract which he has attempted to enter into but which was invalid by reason of some stipulation in it forbidden by the law; the design and effect of all these being to establish matters in the condition in which it was the intention of all concerned to place them. In the case before us, as in all such cases, it is the office of the court to discover and carry out the legislative intent. Is it to confirm and validate a contract and enable the parties to do that which both desired to accomplish? or is it merely to effect the temporary removal of a penalty which in strictness is no part of the contract? Upon this point the language of the act is significant; it is that the contract is " validated, confirmed, and may be enforced;" validated—that is, made as binding as the parties could have made it if no statute of usury had hampered them; enforced—that is, without any limitation expressed or implied as to the time when, other than that which attaches to all contracts. There is here no intimation of any reservation of power over the contract thus confirmed, for future exercise; no hint that it is a contract for an uncertain time or of inferior degree. This imports more than giving a new form of remedy; it is a plain declaration of legislative intent to exercise the power of indirectly creating this contract between these parties as to the payment of interest.

And courts, when interpreting statutes of this character, also speak of contracts, and of validating, confirming and enforcing them; recognizing always the legal idea enfolded in the word "contract," namely, that there has come into existence a legal tie whereby one party is bound expressly to another to pay a sum of money, or perform or omit a certain

act. This tie once formed is not thereafter to be severed or even weakened by legislative action. Forms for enforcing a legal right may be changed, but the obligation itself is indestructible. After the passage of the act of 1872 the plaintiff held a vested right in a validated contract, entitled to the same measure of protection as if it had existed from the time of the defendant's promise. The parties being once placed, either by their own action or by the sovereign power of the legislature, in a position where there is a valid obligation on the part of the defendant to pay, and a corresponding vested right on the part of the plaintiff to demand, interest at the rate of $7\frac{3}{10}$ per cent. per annum, alike in both cases all legal consequences irresistibly follow. The legislature can no more take back this contract right, vesting by its own authority, than it can destroy a like right existing by agreement of the parties.

In view therefore of the expressive language of the confirming act of 1872, we are of opinion that under it contract rights became vested in the plaintiff which subsequent legislation cannot destroy or affect; and that the repealing act of 1873 is inoperative so far forth as those rights are concerned. It has not been made to appear to us that this latter act is so manifestly just, reasonable, and conducive to the general good, that it should draw to itself the extraordinary power of destroying vested rights.

We think that damages for the detention of the money after the time when the note became due and payable should be assessed at the statutory rate of interest prevailing during the time of such detention.

In *Fisher* v. *Bidwell*, 27 Conn., 363, the question presented was whether, in an action for the amount of a sum of money loaned for a particular time on a contract for usurious interest, the plaintiff is by our law entitled, as damages, to interest computed according to the legal rate on such sum, from the time when the credit for the loan expired, to the rendition of the judgment. The court said that in such a case, if the money was not paid when it became due by the terms of the contract, damages would be recoverable by the

lender for the injury to him consequent on its detention after the time when it was agreed to be paid, and such damages would be estimated according to the established legal rate of interest; that rate, although arbitrary, furnishing a general, convenient and uniform rule for determining the amount of such damages. In *Beckwith* v. *Trustees of the Hartford, Prov. & Fishkill Railroad Co.*, 29 Conn., 268, damages for the detention of borrowed money beyond the contract period were assessed at the rate of seven per cent. per annum, for the reason that the legislature had legalized in advance seven per cent. as the rate of interest upon that particular loan at the request of the borrowers. In *Adams* v. *Way*, 33 Conn., 419, the damages were assessed at twelve per cent. per annum, that being the statute rate of interest upon the loan in the state of Wisconsin where it was made. In *Hubbard* v. *Callahan*, (*ante*, page 524,) the plaintiff was allowed to recover fifteen per cent. per annum as interest upon a written contract to pay that rate for the use of money beyond the time when the note was made payable, the statute then providing that when there was no agreement for a different rate of interest the same should be six per cent., and that it shall be lawful to contract for the payment and receipt of any rate of interest. In the case before us, the rate of interest which the defendant agreed to pay was in excess of the statute rate existing at the time when he executed his note. In this respect it differs from the three cases last referred to, and we think we do not infringe upon the rule therein adopted if in this case we assess damages for the retention of money by the defendant beyond the contract time, at the statute rate of interest existing during the time he has elected thus to retain the money.

We advise the Superior Court to render judgment for the plaintiffs for the principal of the debt, with interest at the rate of $7\frac{3}{10}$ per cent. per annum from the date to the maturity of the note, and with damages thereafter to be assessed in accordance with the statutory rate of interest.

In this opinion CARPENTER and FOSTER, Js., concurred.

PARK, C. J., (dissenting.)  The legislation pertaining to this controversy has been as follows :—

The act of 1849, which was in force when the contract was made, provided that a party should not be bound by such a contract to pay usurious interest, and made the contract void so far as it related to interest.  The act of 1872 declared that the defendant should be bound by his contract, and gave the plaintiffs the right to enforce the same.  The act of 1873 repealed the act of 1872.  Here legislation ended upon the subject, before anything had been done by the plaintiffs towards enforcing their contract, save bringing their suit.

Now it is said that the act of 1872 was more effectual in its operation than either of the other acts ; for it conferred upon the plaintiffs a vested right to enforce their contract, which the act of 1866 was powerless to prevent, although in force at the time the contract was made, and which the act of 1873 was ineffectual to take away.

It seems unreasonable to me that if rights were vested in either of these parties by either of these acts, the act of 1866 did not vest in the defendant the right to make void the contract to pay usurious interest, inasmuch as that act was in force at the making of the contract.

The case of *Welch* v. *Wadsworth*, 30 Conn., 149, made it a grave question whether such right was not vested in the defendant in that case, which is similar to this ; but the court, in an elaborate opinion, came to the conclusion that such right did not exist.

If the right to defend against this contract was not vested in the defendant by the act of 1866, it seems to me clear that the act of 1872 conferred no vested right upon the plaintiffs to enforce the contract.  The right to defend against a contract must be at least equal to the right to enforce the same contract.  The one right is as valuable as the other.  The one ought to be as extensive as the other.  The one is property, and capable of being vested, as much as the other.  Both pertain to the same subject matter and in equal degree.  The respective rights are correlative, and equal as correlates in every respect.

If a man discharges a debt of a thousand dollars that I owe him, I am a thousand dollars richer, although I have no more property than I had before. If I have a right which will bar a claim of a thousand dollars against me, I am a thousand dollars richer than I would be without such right. How is it possible then that the act of 1872 conferred a vested right upon the plaintiffs to enforce this contract, which the act of 1873 could not impair, when the act of 1866, in force when the contract was made, conferred no vested right upon the defendant to defend against it? All that was conferred upon the plaintiffs by the act of 1872 was taken from the defendant. The defendant was deprived to the same extent as the plaintiffs were benefited. It seems to me impossible to discriminate between these parties in favor of vested rights in the plaintiffs. The Maine Law (popularly so called) made it criminal to sell spirituous and intoxicating liquors by other than town agents, and barred a recovery in all cases of such sales. The legislature in 1863 validated such sales, and made the debt collectible. Suppose, the day after the act of 1863 had come in force, the legislature had discovered that it had made a mistake. Was it so that the error could not have been corrected? that the vested rights interposed an effectual barrier to such correction?

Such cases are different from those where confirming acts have been passed validating defective marriages, deeds, wills, district and town meetings, and other transactions, where through ignorance or accident some requirement of the law had not been fully complied with, or had been wholly overlooked, or where want of authority in some official had made his proceedings invalid. In all such cases the thing sought to be accomplished was lawful and right, and equity and good policy required that the act should be confirmed. Public policy in these cases, as well as vested rights that have grown up under the confirming acts, would prevent a subsequent legislature from undoing what a previous legislature had done. But the confirming act in question was of a different character. What equity existed in these plaintiffs which required that they should have the right to enforce a

contract that they voluntarily made knowing it to be unlaw-
ful ?   It is against a well established rule to hold that they
were entitled to relief from the consequences of their own
deliberate act in violating the law.   The forfeiture was volun-
tarily incurred, and the confirming act was simply gratuitous
relief.   It only furnished a remedy where none existed.   The
plaintiffs might have availed themselves of its benefits, by
enforcing their contract before its repeal; but having neg-
lected to do so, their remedy is gone.   I think no interest
should be allowed.

In this opinion LOOMIS, J., concurred.