UNION INSTITUTION FOR SAVINGS *vs.* CITY OF BOSTON & others.

Suffolk. March 23. — June 30, 1880. AMES & LORD, JJ., absent.

Under the St. of 1867, c. 56, § 1, if the parties to a contract stipulate for a higher rate of interest than six per cent, interest after the breach of the contract is ordinarily to be measured by the rate stated in the contract to the time of payment or of judgment.

By the terms of a mortgage of land in a city, the deed was to be void on the payment in five years of a certain sum and interest at the rate of seven and one half per cent per annum. The mortgagor subsequently made another mortgage to a third person, which was foreclosed; and while the first mortgage was in force the land was surrendered to, and taken by, the city, under a stat-ute which allowed the city to make certain improvements and to assess the cost thereof upon the land, and gave any person dissatisfied with the assess-ment the right to surrender the land to the city. The owner of the equity of redemption filed a petition to have his damages assessed, in which the mort-gagee was wrongfully allowed to join, and a new trial was ordered for this reason. On the new trial the jury assessed the value of the land at a much less sum than at the former trial. *Held,* on a bill in equity by the mortgagee against the owner of the equity of redemption and the city, that the plaintiff was entitled, out of the amount awarded, to be paid, in addition to the princi-pal of the mortgage, interest at the rate stated therein after as well as before the time when the mortgage became due.

BILL IN EQUITY, filed November 30, 1878, by a mortgagee of several parcels of land, against the city of Boston, Walter Farns-worth, W. E. Woodward and William H. Piper, to enforce a lien upon money due from the city of Boston for damages for land taken by the city, under the St. of 1873, c. 340. The case

was heard by *Colt*, J., upon a statement of facts, the material parts of which were as follows:

On June 2, 1871, Woodward and Piper, who then owned the several parcels of land, executed a mortgage of them to the plaintiff, the condition of the mortgage being that, if the grantors should pay to the plaintiff "the sum of one hundred thousand dollars in five years from date, with interest semiannually at the rate of seven and a half per cent per annum," "then this deed, as also one note of even date herewith signed by the said W. E. Woodward and W. H. Piper, whereby they promise to pay to the said corporation or order the said sum and interest at the times aforesaid, shall be void." The note referred to was signed by Woodward and Piper, and was as follows: "Boston, June 2, 1871. For value received, we jointly and severally promise to pay to the Union Institution for Savings in the city of Boston or order the sum of one hundred thousand dollars, in five years from this date, with interest, to be paid semiannually, at the rate of seven and a half per centum per annum during said term, and for such further time as said principal sum or any part thereof shall remain unpaid."

On December 2, 1871, Woodward and Piper made a second mortgage of the same parcels of land to the plaintiff, to secure the payment of the further sum of $20,000, in four and a half years from that date. The terms of this mortgage deed and of the promissory note given therewith were the same, so far as they related to the payment of interest and the rate, as in the previous mortgage and note.

On October 11, 1873, Woodward and Piper made a third mortgage of the land to William H. Hill, subject to the mortgages to the plaintiff. On October 17, 1874, Hill assigned this mortgage to Farnsworth, who on February 15, 1875, sold the land, for breach of condition, under a power contained in the mortgage, to a person who two days afterwards reconveyed the land to Farnsworth.

Farnsworth never saw the mortgage notes given by Woodward and Piper to the plaintiff, nor knew their tenor, except so far as they were described in the mortgages on record. Interest was paid on both notes to June 2, 1875, and $5000 was paid on account of the principal of the second note in 1874.

On September 1, 1873, the board of aldermen of Boston passed an order, under the St. of 1873, c. 340, establishing the grade of the Northampton Street District, in which the parcels of land in question were situated, in order to secure complete drainage, to prevent nuisances and to preserve the public health; and on September 5, 1873, an order passed by the city council, directing the owners of lands in that district to raise the grade of their lands, was approved by the mayor. The city entered upon the lands, raised the grade thereof, and assessed the cost to the owners; and on March 8, 1875, Farnsworth notified the city that he was dissatisfied with the assessment on his lands, and offered to surrender them to the city. On March 22, 1875, the committee of the city council to whom was referred this notice reported that no further action was necessary as all the parties having a legal interest had not joined in the surrender. Two days after this, Farnsworth requested the plaintiff to join in the surrender; and the plaintiff, on the same day, gave notice to the city that the plaintiff "approves of said order of surrender, and desires that said premises may be surrendered to said city, conformably to law; yet not so as to affect or impair the rights or security of this corporation to recover the amount due on the mortgages thereof."

In November 1876, the city council passed an order taking the lands in question, which order was approved by the mayor, and was recorded on December 1, 1876, in the registry of deeds. Farnsworth thereupon, not agreeing with the city upon the damage done to him by such taking, filed several petitions in the Superior Court for a jury to assess his damages. The plaintiff in this action petitioned the Superior Court for leave to join in these petitions of Farnsworth, and for an assessment of its damages by reason of the taking; and this petition was granted. At the trial of one of the petitions, it was agreed between the present plaintiff and Farnsworth that, if the jury found for the petitioner, their verdict up to $131,000 should be for the present plaintiff alone, and that, for any excess above that sum, their verdict should be for Farnsworth; the judge instructed the jury accordingly; and the jury returned a verdict in favor of the present plaintiff for $131,000, and in favor of Farnsworth for $11,000. On exceptions taken by the city,

it was held that the present plaintiff, not having taken possession under its mortgages, was not entitled to join in the petition of Farnsworth, and a new trial was ordered.  See *Farnsworth* v. *Boston*, 126 Mass. 1.  At the subsequent trial, the jury assessed the value of the same parcel of land at $112,887.87.  In both trials, the court ruled that the damages should be assessed for the value of the land in March 1875.

The plaintiff contended that it was entitled to the principal of the mortgage debt, and to interest at seven and one half per cent from June 2, 1875.  Farnsworth admitted the plaintiff's claim, except as to the amount of interest, which he contended should be but six per cent from that date.  Since the filing of the bill the plaintiff had been paid the entire amount of its claim except the difference between the two rates of interest, which amounted to the sum of $6943.12.

The judge made a decree for the plaintiff for that sum and costs ; and the defendant Farnsworth appealed.

*J. A. Maxwell*, for the plaintiff.

*J. P. Treadwell*, for Farnsworth.  There was no contract of any kind between the plaintiff and Farnsworth, and the plaintiff could not have maintained any action against him for the principal or interest of the debt.  The obligation of Farnsworth, if any, arises from the equity of the case, and the plaintiff, seeking equity, must do equity.  The lien of the plaintiff is on the lands or their proceeds for the debt as it appears by the mortgages, and not as it appears by the notes.

In *Brannon* v. *Hursell*, 112 Mass. 63, the defendant was the maker of the note, and the case was simply an interpretation of the contract made by him.  The rule adopted in that case is contrary to many decisions.  See *Cook* v. *Fowler*, L. R. 7 H. L. 27 ; *Miller* v. *Burroughs*, 4 Johns. Ch. 436 ; *Morgan* v. *Jones*, 8 Exch. 620 ; *Keene* v. *Keene*, 3 C. B. (N. S.) 144 ; *Moreland* v. *Lawrence*, 23 Minn. 84 ; *Cecil* v. *Hicks*, 29 Gratt. 1 ; *Eaton* v. *Boissonnault*, 67 Maine, 540 ; *Duran* v. *Ayer*, 67 Maine, 145 ; *Rushing* v. *Sebee*, 12 Bush, 198 ; *Ashuelot Railroad* v. *Elliot*, 57 N. H. 397 ; *Burnhisel* v. *Firman*, 22 Wall. 170.  See also *Ayer* v. *Tilden*, 15 Gray, 178.

A court of equity will take into consideration the fact that, on account of the illegal act of the plaintiff in joining in the

petition of this defendant, there was a long delay in the pay-
ment of damages, and the damages were materially reduced.

GRAY, C. J.   This is a bill in equity by a mortgagee of land
taken by the city for the public use, and the equity of re-
deeming which from the plaintiff's mortgages is owned by the
defendant Farnsworth, to enforce a lien upon the money due
from the city for damages for such taking.   By the terms of
these mortgages, the amounts of the mortgage debts were to be
paid in five years, which had elapsed some time before the filing
of the bill, "with interest semiannually at the rate of seven and
a half per centum per annum;" and the question is, at what
rate the interest is to be computed for the time since the prin-
cipal sums became due.

By the St. of 1867, *c.* 56, § 1, the legal rate of interest in this
Commonwealth is six per cent a year, when there is no agree-
ment for a different rate ; and by § 2, it is lawful to contract for
any rate of interest, "provided, however, that no greater rate
of interest than six per centum per annum shall be recovered in
any action, except when the agreement to pay such greater rate
of interest is in writing."

When a written agreement is made, as authorized by the stat-
ute, to pay a greater rate of interest yearly than six per cent,
the intention of the contract and the effect of the statute appear
to us to be that the creditor shall receive the stipulated rate of
interest so long as the debtor has the use of the principal ; and
that, in an action upon the contract, the creditor shall recover
interest at that rate, not merely until the time when the princi-
pal is agreed to be paid to him, but until it is actually paid, or
his claim for principal and interest judicially established.

In *Brannon* v. *Hursell,* 112 Mass. 63, it was accordingly held,
in an action upon a promissory note payable in four months,
"with interest at ten per cent," that interest was to be computed
at that rate, not merely to the maturity of the note, but to the
time of the verdict; and upon reconsideration of the authorities
there referred to, and examination of the numerous decisions
cited at the argument of the present case, we see no reason to
overrule or qualify the point adjudged, although the statement
in the opinion that "the plaintiff recovers interest, both before
and after the note matures, by virtue of the contract, as an

incident or part of the debt," might well be modified so as to say that the interest after the breach of the contract, though not strictly recoverable as part of the debt, but rather as damages, is ordinarily to be measured, according to the intention manifested by the contract, by the standard thereby established.

In *Price* v. *Great Western Railway*, 16 M. & W. 244, 248, Baron Parke said that the reason why, under a mortgage deed whereby interest is payable up to a certain day, interest beyond that day might be recovered as damages, was "because the deed shows the intention of the parties that it should be a debt bearing interest;" and added, "The jury give it as damages for the detention of the debt. It is not recoverable as interest on the contract itself."

In *Morgan* v. *Jones*, 8 Exch. 620, the owners of a vessel mortgaged it as security for a debt, with a proviso for redemption on payment of the principal and interest at the rate of ten per cent in six months, but without any provision for payment of interest after that time. The principal not being paid then, it was held by Chief Baron Pollock and Barons Parke, Platt and Martin that the mortgagee was entitled to interest at the same rate until payment; and Baron Parke said: "It was a sale of a chattel, redeemable on a certain day; then, if the mortgagors do not avail themselves of that provision, the same rate of interest continues payable. It is exactly like a mortgage of real estate, where the mortgagee becomes the legal owner."

So in *Keene* v. *Keene*, 3 C. B. (N. S.) 144, an action by an indorsee against the drawer of a bill of exchange for £200, payable in twelve months, with interest at the rate of ten per cent per annum, was referred to a master, who allowed ten per cent interest after, as well as before, the maturity of the bill. The defendant moved to recommit the case to the master; and argued that there was no implied contract on the part of the drawer, upon the acceptor's default, to pay more than the ordinary interest of five per cent; that the acceptor could only be liable to interest at five per cent after maturity of the bill; and that the bill was in effect a bill for £220. But the court overruled the motion. Mr. Justice Willes said: "Until the maturity of the bill, the interest is a debt; after its maturity, the interest

is given as damages at the discretion of the jury. Here a jury might adopt as the measure of damages the rate of interest which the parties themselves had fixed; and the master is substituted for a jury." Chief Justice Cockburn said: " I see no ground for referring this case back to the master, as prayed. He has, as he well might, given in the shape of damages the rate of interest the parties themselves had contracted for. I think he has done quite right." Mr. Justice Crowder said: "I am of the same opinion. The master would, I think, have acted very unreasonably if he had not assessed the damages by the rate which the parties had stipulated as to the value of the money." And Mr. Justice Williams concurred.

In *Cook* v. *Fowler*, L. R. 7 H. L. 27, a debtor, on May 2, 1864, gave a warrant of attorney to a creditor " to secure the payment of the sum of £1330, with interest thereon at and after the rate of £5 per cent per month, on the 2d of June next, judgment to be entered up forthwith; and in case of default in payment of the said sum of £1330 and interest thereon on the day aforesaid, execution or executions and other processes may then issue for the said sum of £1330 with interest, together with costs of entering up judgment, &c., &c., and all other incidental expenses whatever." The debtor died before the 2d of June, and no judgment was entered up. The creditor, who also held mortgages on lands of his debtor, concealed his warrant of attorney for three years, and then set it up in answer to a bill of the executors against him for an account, and more than a year later first claimed to be allowed interest for the whole time at the rate of sixty per cent a year. It was held by the House of Lords, affirming a decree of Vice Chancellor Stuart, that he was entitled after the 2d of June, 1864, to ordinary interest only; and this upon two grounds: 1st. That the warrant of attorney and the defeasance did not create a contract, but only an authority to enter up judgment on June 2, 1864, and a stipulation that execution might then issue. 2d. The extraordinary and excessive rate of interest, and the conduct of the creditor.

Although Lord Chelmsford (apparently overlooking the cases of *Morgan* v. *Jones* and *Keene* v. *Keene*, above cited) said, " There is no authority that I can find to support the argument of the

counsel for the appellant, that when a security for money payable at a certain day stipulates for the allowance of a certain rate of interest up to the day fixed for payment, interest at the same rate is implied to be payable afterwards;" L. R. 7 H. L. 35; Lord Chancellor Cairns and Lord Selborne were clearly of a different opinion. The Lord Chancellor said that, according to the well-known principle, which had been referred to in many cases, " any claim, in the nature of a claim for interest after the day up to which interest was stipulated for, would be a claim really, not for a stipulated sum and interest, but for damages, and then it would be for the tribunal before which that claim was asserted to consider the position of the claimant, and the sum which properly, and under all the circumstances, should be awarded for damages. No doubt, *prima facie*, the rate of interest stipulated for up to the time certain might be taken, and generally would be taken, as the measure of interest; but that would not be conclusive. It would be for the tribunal to look at all the circumstances of the case, and to decide what was the proper sum to be awarded by way of damages." pp. 32, 33. And Lord Selborne said : " Although in cases of this class interest for the delay of payment *post diem* ought to be given, it is on the principle, not of implied contract, but of damages for a breach of contract. The rate of interest to which the parties have agreed during the term of their contract may well be adopted in an ordinary case of this kind by a court or jury, as a proper measure of damages for the subsequent delay; but that is because, ordinarily, a reasonable and usual rate of interest, which it may be presumed would have been the same whatever might be the duration of the loan, has been agreed to." pp. 37, 38.

In a later case, Lord Justice Amphlett considered it to be clearly established by the previous decisions that in the case of a mercantile security it is to be supposed that the parties intended interest to run on at the old rate if the money was not paid at the date; and so, in the redemption of mortgages, although the day for payment has passed and there is no provision with the creditor for payment of interest after that day, the court will assume that interest is payable after the day at the same rate as before; and that, although what has to be paid may technically be called damages, they are damages of a peculiar

kind, for it would not be left to a jury to regulate the amount; but the jury would be directed, as a matter of law, to find damages of the same amount as the interest which would have been payable if the promise had extended over the period.   *Gordillo* v. *Weguelin*, 5 Ch. D. 287, 303.

In the very recent case of *In re Roberts*, 14 Ch. D. 49, where by a mortgage deed, reciting an agreement for a loan of £5000 at the rate of ten per cent per annum, the mortgagor covenanted to pay in six months the sum of £250, being half a year's interest on the £5000, and in twelve months the sum of £250, being a further half-year's interest, and also the principal sum of £5000, making together £5250, and made no covenant for the payment of interest in the event of the principal remaining unpaid after the day named for its repayment, but actually paid interest at the rate of ten per cent for three years afterwards, and then died; and after a decree for administration of his estate, the mortgagee proved as a creditor for principal and interest; it was indeed held by Sir George Jessel, M. R.; and Lords Justices Brett and Cotton, that he was entitled, in such a suit, to interest at the rate of five per cent only.   But no decision upon the point appears to have been brought to the notice of the court, except *Cook* v. *Fowler*, above cited; and the case was decided upon the assumption that there was no precedent for giving more than the ordinary rate of interest by way of damages.   Under such circumstances, the case cannot be considered, by a court not bound by it as authority, to outweigh the decisions of Chief Baron Pollock and Baron Parke, of Chief Justice Cockburn and Mr. Justice Willes, and their associates, and the opinions of Lord Cairns and Lord Selborne, above quoted.   It may also be observed that the Master of the Rolls said (without giving any reason why the agreement of the parties should be allowed a greater effect by way of protection of the party who had broken his contract, than for the benefit of the party who by such breach had been deprived of the use of his money) that, if the rate of interest named by the parties were below the ordinary rate, it would be the proper measure of damages; and that Lord Justice Cotton took the precaution to remark that the court was not deciding what rate of interest should be allowed in a suit for redemption.

Before the decision in *Brannon* v. *Hursell*, the rule there de-
clared had been established in Indiana, California, Texas, New
Jersey, Illinois, Wisconsin, Iowa, Nevada and Tennessee. *Kilgore*
v. *Powers*, 5 Blackf. 22.   *Kohler* v. *Smith*, 2 Cal. 597.   *Guy* v.
*Franklin*, 5 Cal. 416.   *Corcoran* v. *Doll*, 32 Cal. 82.   *Hopkins*
v. *Crittenden*, 10 Tex. 189.   *Wilson* v. *Marsh*, 2 Beasley, 289.
*Phinney* v. *Baldwin*, 16 Ill. 108.   *Etnyre* v. *McDaniel*, 28 Ill.
201.   *Heartt* v. *Rhodes*, 66 Ill. 351.   *Spencer* v. *Maxfield*, 16
Wis. 541.   *Pruyn* v. *Milwaukie*, 18 Wis. 367.   *Hand* v. *Arm-
strong*, 18 Iowa, 324.   *Thompson* v. *Pickel*, 20 Iowa, 490.   *Mc-
Lane* v. *Abrams*, 2 Nev. 199.   *Overton* v. *Bolton*, 9 Heisk. 762.
It has since been affirmed by decisions of the highest courts of
Ohio, Michigan and Virginia.   *Monnett* v. *Sturges*, 25 Ohio St.
384.   *Marietta Iron Works* v. *Lottimer*, 25 Ohio St. 621.   *Warner*
v. *Juif*, 38 Mich. 662.   *Cecil* v. *Hicks*, 29 Gratt. 1.   And it has
been acted on by Judge Lowell in the Circuit Court of the
United States for this District.   *Burgess* v. *Southbridge Savings
Bank*, 2 Fed. Rep. 500.

In Connecticut, the law seems formerly to have been consid-
ered as settled in accordance with these decisions; and, although
some recent *dicta* have a tendency to explain away the grounds
assigned in the earlier judgments, there is no adjudication to the
contrary.   *Beckwith* v. *Hartford, Providence & Fishkill Railroad*,
29 Conn. 268.   *Adams* v. *Way*, 33 Conn. 419.   *Hubbard* v. *Calla-
han*, 42 Conn. 524, 537.   *Suffield Ecclesiastical Society* v. *Loomis*,
42 Conn. 570, 575.   *Seymour* v. *Continental Ins. Co.* 44 Conn.
300.

The earlier decisions in New York support the same rule, both
as to mortgages and as to ordinary debts.   *Miller* v. *Burroughs*,
4 Johns. Ch. 436.   *Van Beuren* v. *Van Gaasbeck*, 4 Cowen, 496.
But in the light of later cases the question may perhaps be con-
sidered an open one in that State.   See *Bell* v. *Mayor of New
York*, 10 Paige, 49; *Hamilton* v. *Van Rensselaer*, 43 N. Y. 244;
*Ritter* v. *Phillips*, 53 N. Y. 586.   It may be doubted, however,
whether the cases of *Macomber* v. *Dunham*, 8 Wend. 550, and
*United States Bank* v. *Chapin*, 9 Wend. 471, sometimes referred
to in discussions of the subject, are really applicable.   In one of
them, the decision was that a corporation, authorized by its
charter to charge interest for a full month on loans for more

than fifteen days and less than a month, could not demand inter-
est at the same rate during subsequent months while such a loan
remained unpaid.   In the other, the only point decided .was,
that a bank, limited by statute to six per cent interest on all
discounts, was not thereby prevented from recovering the legal
rate of seven per cent as damages after breach of the contract
by the other party.   Each case turned, not upon the terms of
a contract, but upon the effect of a peculiar statute, the scope
of which was clearly defined and limited.   And in neither of
them is there any intimation of an intention to overrule the
decision of Chancellor Kent in *Miller* v. *Burroughs*, or that of
Chief Justice Savage and Justices Sutherland and Woodworth
in *Van Beuren* v. *Van Gaasbeck*.   The case of *Kitchen* v. *Mobile
Bank*, 14 Ala. 233, is like *United States Bank* v. *Chapin*.

In *Ashuelot Railroad* v. *Elliot*, 57 N. H. 397, 437, 439, cited
for the defendant Farnsworth, the point decided was, that, upon
bonds bearing interest at the rate of six per cent annually pay-
able half-yearly, interest, after maturity, and payment of all the
coupons, should be computed in equity at the rate of six per
cent, without annual or other rests; in short, that compound
interest should not be allowed in a suit on the principal debt.
That decision, in effect overruling *Peirce* v. *Rowe*, 1 N. H. 179,
accords with the general current of authority, in equity as well
as at law.   *Ferry* v. *Ferry*, 2 Cush. 92.   *Connecticut* v. *Jackson*,
1 Johns. Ch. 13.   *Van Benschooten* v. *Lawson*, 6 Johns. Ch. 313.
*Mowry* v. *Bishop*, 5 Paige, 98.   *Sparks* v. *Garrigues*, 1 Binn.
152, 165.   *Stokely* v. *Thompson*, 34 Penn. St. 210.   *Doe* v. *War-
ren*, 7 Greenl. 48.   *Parkhurst* v. *Cummings*, 56 Maine, 155.   It
does not affect the question before us.

The leading cases in support of the defendant's view are *Lud-
wick* v. *Huntzinger*, 5 W. & S. 51, and *Brewster* v. *Wakefield*, 22
How. 118.

In *Ludwick* v. *Huntzinger*, it was held by the Supreme Court
of Pennsylvania that, on a bond for the payment of money in
twenty-one months, with three per cent interest from date, the
obligee was entitled to recover three per cent interest until the
time fixed for payment, and six per cent afterwards.

In *Brewster* v. *Wakefield*, it was held by the Supreme Court
of the United States, (reversing the judgment of the Supreme

Court of the Territory of Minnesota in 1 Minn. 352,) that upon a mortgage to secure notes which respectively stipulated for the payment of interest at the yearly rates of twenty-four and twenty-five per cent, where the rate fixed by statute, in the absence of express agreement, was seven per cent, interest at the rate of seven per cent only could be recovered after the maturity of the notes. Chief Justice Taney, in delivering judgment, said : " The contract being entirely silent as to interest if the notes should not be punctually paid, the creditor is entitled to interest after that time by operation of law, and not by any provision in the contract. And, in this view of the subject, we think the Territorial courts committed an error in allowing, after the notes fell due, a higher rate of interest than that established by law where there was no contract to regulate it." He then referred to the cases of *Macomber* v. *Dunham, United States Bank* v. *Chapin,* and *Ludwick* v. *Huntzinger,* above stated ; and added : " Nor is there anything in the character of this contract that should induce the court, by supposed intendment of the parties or doubtful inferences, to extend the stipulation for interest beyond the time specified in the written contract. The law of Minnesota has fixed seven per cent per annum as a reasonable and fair compensation for the use of money ; and where a party desires to exact from the necessities of a borrower more than three times as much as the Legislature deems reasonable and just, he must take care that the contract is so written, in plain and unambiguous terms ; for, with such a claim, he must stand upon his bond."

The same rule appears to have been followed by the Supreme Court in a case from the Territory of Utah. *Burnhisel* v. *Firman,* 22 Wall. 170. And it has since been adopted as a general rule by the courts of Kansas, Minnesota, South Carolina, Rhode Island, Kentucky, Arkansas and Maine. *Robinson* v. *Kinney,* 2 Kans. 184. *Lash* v. *Lambert,* 15 Minn. 416. *Moreland* v. *Lawrence,* 23 Minn. 84. *Langston* v. *South Carolina Railroad,* 2 So. Car. (N. S.) 248. *Pearce* v. *Hennessy,* 10 R. I. 223. *Rilling* v. *Thompson,* 12 Bush, 310. *Newton* v. *Kennerly,* 31 Ark. 626. *Duran* v. *Ayer,* 67 Maine, 145. *Eaton* v. *Boissonnault,* 67 Maine, 540.

But the later judgments of the Supreme Court exhibit a difference of opinion as to the general rule, though not of adjudication in the particular cases before the court.

In *Cromwell* v. *County of Sac*, 96 U. S. 51, which arose in the Circuit Court of the United States for the District of Iowa upon a bond given in Iowa and stipulating for the payment of ten per cent interest, Mr. Justice Field, delivering the judgment of the Supreme Court, treated the decision in *Brewster* v. *Wakefield* as based upon the exorbitant rate of the interest, and, after referring to *Brannon* v. *Hursell* and many of the other American cases above cited, said, " The preponderance of opinion is in favor of the doctrine, that the stipulated rate of interest attends the contract until it is merged in the judgment." And it was held, reversing in this respect the judgment of the Circuit Court, that the construction given by the Supreme Court of Iowa to the statute of that state was conclusive, and that interest must be computed at the rate expressed in the contract to the time of judgment.

On the other hand, in the case of *Holden* v. *Trust Co.* 100 U. S. 72, which arose in the District of Columbia under a statute like ours except in not allowing the parties to stipulate for interest at a greater rate than ten per cent, it was held, upon a bill in equity, that on a note made payable in four years, with interest at the rate of ten per cent payable semiannually, and secured by a conveyance of real estate in trust, interest from the maturity of the note should be computed at the ordinary rate of six per cent only; and Mr. Justice Swayne, in delivering judgment, said : " The rule heretofore applied by this court, under the circumstances of this case, has been to give the contract rate up to the maturity of the contract, and thereafter the rate prescribed for cases where the parties themselves have fixed no rate. *Brewster* v. *Wakefield*, 22 How. 118. *Burnhisel* v. *Firman*, 22 Wall. 170. Where a different rule has been established, it governs, of course, in that locality. The question is always one of local law. This subject was fully examined in the recent case in this court of *Cromwell* v. *County of Sac*, 94 U. S. 351. [The reference intended is evidently 96 U. S. 51, above cited.] We need not go over the ground again. Here the agreement of the parties extends no further than to the time fixed for the payment of the principal. As to everything beyond that, it is silent. If payment be not made when the money becomes due, there is a breach of the contract, and the creditor is entitled to damages.

Where none has been agreed upon, the law fixes the amount according to the standard applied in all such cases. It is the legal rate of interest where the parties have agreed upon none. If the parties meant that the contract rate should continue, it would have been easy to say so. In the absence of a stipulation, such an intendment cannot be inferred."

The law upon this subject, as declared by the Supreme Court of the United States, would appear to be that in the District of Columbia or in a Territory of the United States, the rate of interest agreed by the parties in the usual form is recoverable to the stipulated time of payment only, and the statute rate of interest afterwards ; but that cases arising in any State must be governed by the local law as expounded by its courts.

Two observations may be made on the judgments which are opposed to the decision in *Brannon* v. *Hursell.* 1st. They admit that the intent of the parties, if expressed with sufficient clearness in their contract, will govern the rate of interest to the time of judgment. *Brewster* v. *Wakefield* and *Holden* v. *Trust Co.*, above cited. *Pearce* v. *Hennessy*, 10 R. I. 227. *Capen* v. *Crowell*, 66 Maine, 282. *Paine* v. *Caswell*, 68 Maine, 80. *Gray* v. *Briscoe*, 6 Bush, 687. *Young* v. *Thompson*, 2 Kans. 83. 2d. They assume, in opposition to the leading English cases, that, if interest after the maturity of the contract is to be recovered, not as interest, but as damages, it must necessarily be estimated at the ordinary rate.

The question being, as is clearly recognized in the two most recent judgments of the Supreme Court of the United States, one of local law, in deciding which this court is not bound by the opinion of any other tribunal, we are constrained, with great respect for those who take a different view of the subject, to say that the rule established in this Commonwealth by the adjudication in *Brannon* v. *Hursell* appears to us to best accord with the purpose of the Legislature, with the apparent intention of the parties, with the usage and understanding of men of business, with the weight of legal reasoning and authority, and with the principles of equity that govern the enforcement and redemption of mortgages.

In the case before us, each of the mortgages to the plaintiff, duly recorded, and subject to which the defendant Farnsworth

took his title, makes the payment by the mortgagors of the principal debt in five years, "with interest semiannually at the rate of seven and a half per cent per annum," a condition upon which the mortgage, and "one note of even date herewith" whereby the mortgagors "promise to pay the said corporation or order the said sum and interest at the times aforesaid," shall be void. Each of the notes thus referred to does in the most explicit terms require interest to "be paid semiannually at the rate of seven and a half per centum per annum during said term, and for such further time as said principal sum or any part thereof shall remain unpaid;" and the description of the debt and interest in the mortgage might be held sufficient to give any one taking the land subject to the mortgage such information that he could not redeem the land without paying interest according to the stipulation in the notes, even if by that stipulation such interest was to be computed for a longer period than would appear upon the face of the mortgage taken by itself. *Richards* v. *Holmes*, 18 How. 143. *Ackens* v. *Winston*, 7 C. E. Green, 444. But we do not decide that point, because we are of opinion, on the grounds already stated, that the legal effect of the provision of the mortgage is the same as that of the fuller lan guage of the note.

The stipulated rate is only one fifth of one per cent a yeai higher than the interest payable upon some notes of the United States, and there is no pretence that it is unconscionable or unreasonable. The claim upon the money received by Farnsworth from the city is no less than it would have been against the land for which that money is a substitute. *Farnsworth* v. *Boston*, 126 Mass. 1. As he might at any time have stopped the running of the interest after the maturity of the notes by performing his obligation and paying the mortgage debt, neither the lapse of time nor the other circumstances of the case afford any reason why the plaintiff should not recover interest at the stipulated rate to the time of the decree.        *Decree affirmed.*