ALEXANDER McDONALD *vs.* GEORGE W. FAULKNER.

Middlesex.    March 13, 16, 1891. — May 20, 1891.

Present: FIELD, C. J., C. ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Exceptions — Trustee Process — Mortgaged Personal Property — Attachment and Sale — Interest.*

Questions of law arising upon an order of the Superior Court, made pursuant to the Pub. Sts. c. 161, § 80, for the payment to a mortgagee of personal property under attachment of what is due on the mortgage, may thereupon be brought to this court by a bill of exceptions.

The provisions for the sale of personal property under attachment contained in the Pub. Sts. c. 161, §§ 89–103, if applicable to mortgaged personal property which has been attached, are nevertheless subordinate to the rights of the mortgagee, under § 80 of that chapter, to have the amount due on the mortgage ascertained as therein provided, and payment thereof ordered or the property restored, irrespective of any such sale or the proceeds thereof.

If personal property mortgaged to secure a note bearing interest at a rate greater than six per cent is attached, and an order made under the Pub. Sts. c. 161, § 80, for the payment of what is due thereon to the mortgagee, interest is to be reckoned on the note at the same rate up to the date of the order, notwithstanding the attachment.

TRUSTEE PROCESS.    Certain personal property belonging to the principal defendant, and mortgaged by him to one Seabury to secure three promissory notes, which bore interest at the rate of six per cent per month and were overdue, was attached by the plaintiff in the defendant's hands, and Seabury was summoned as trustee.    In the Superior Court, at the hearing upon a motion filed by the trustee, *Brigham,* C. J. refused to rule as requested by the plaintiff; and the plaintiff alleged exceptions, which appear in the opinion.

*J. W. Pickering & J. F. Pickering,* for the plaintiff.

*R. Lund,* for the trustee.

HOLMES, J.    In this case an attachment was made of personal property, and the mortgagee was summoned as trustee under the Pub. Sts. c. 161, § 79.    Subsequently, on application by the plaintiff, the attaching officer, purporting to act under the Pub. Sts. c. 161, § 90 *et seq.,* sold the attached property.    The net proceeds of the sale were forty-four dollars and ninety-nine cents.    The trustee, as appears by his answers to the plaintiff's inter-

rogatories, was the holder of three mortgages on the attached property, amounting to three hundred and eight dollars and interest, or much more than the proceeds of the sale. He moved the court for an order of payment as provided in the Pub. Sts. c. 161, § 80. The court found the mortgages to be valid, and that there was due on them upon the day of the order seven hundred and eighty-one dollars and twenty-nine cents, and ordered that sum to be paid in eight days. The case is before us on the plaintiff's exceptions to the refusal of the court to rule in substance that the officer had a right to sell as he did, and that after the sale the court could not order any sum of money to be paid to the trustee and mortgagee in excess of the amount in the officer's hands as shown by his return, and that that amount is presumed to be the equivalent of the property. The plaintiff also excepts to the refusal to rule that interest did not run at the rate stipulated in the notes after the attachment, and to calculation of interest at the rate of the notes up to the date of the order.

A preliminary objection has been suggested, that the exceptions are premature, and that the proper time to raise the questions argued will be when the mortgagee brings an action for the conversion of the mortgaged property, if he shall see fit to do so hereafter. But this cannot be. If the order of the court stands, it is an adjudication of the matters passed upon by it, and will be conclusive between the parties in any later suit. The court is empowered and directed by the Pub. Sts. c. 161, §§ 80, 81, to inquire into the validity of the mortgage if disputed, to find what is justly due upon it, and to direct the attaching creditor to pay it to the mortgagee within a certain time. If the creditor does not pay or tender the sum within the time, the attachment is to be void, and the property is to be restored. If the court makes such an order and the property is not restored, and the mortgagee then brings suit, it will be too late to set up that the order was erroneous because it required too large a sum to be paid. An error of that sort would not make the order void, and the attaching creditor will have had the conditions of his right to keep his attachment conclusively established against him.

It is true, however, that the plaintiff's exceptions might be

disposed of without considering the most important aspect of them. Even if the sale was effective against the mortgagee, so as to substitute the proceeds for the property, and therefore to limit the mortgagee's rights, in case the amount of his debt is not paid, to a return of the proceeds, that would not affect the question to be determined by the court under § 80, or the power of the court to determine it. The inquiry of the court under § 80 has no more to do with the amount of the proceeds where there has been a sale, than it has with the value of the property where there has not been one. By the plain words of the section, the court is to ascertain the amount of the debt in every case, and to order its payment. Then it is for the creditor to make up his mind whether to pay or to lose his attachment. What will be his liability if he does not pay, is a matter which comes up at a later stage.

But to save a second resort to this court we will go further, and say that in our opinion the rulings requested were wrong, and that the sale by the attaching officer did not have the effect attributed to it by the plaintiff. If we should assume, as seems to be assumed in *Porter* v. *Warren*, 119 Mass. 535, 538, as well as in *Jackson* v. *Colcord*, 114 Mass. 60, 62, that the provisions for sale of personal property attached (Pub. Sts. c. 161, §§ 89–103) apply to mortgaged as well as to unencumbered property, nevertheless we should be of opinion that they are subject to the peremptory and unqualified enactment in § 80, that, if the attaching creditor does not pay as directed, the attachment shall be void and the property shall be restored.

Something must yield in order to reconcile the different parts of the chapter, and both the history of legislation and considerations of justice convince us that, if the provisions for sale apply at all, they are subordinate to the rights of the mortgagee. The provisions for sale go back to the St. of 1822, c. 93. At that time mortgaged personal property was not subject to attachment. In 1829 attachment of such property was permitted, but on the express condition that the mortgagee should first be paid or tendered the full amount of his demand. St. 1829, c. 124, § 2. At this time, therefore, there could be no question as to selling perishable property before the mortgagee was paid. At this time, also, so far as we know, there were no provisions for

the recording of mortgages, which seems first to have been introduced by the St. of 1832, c. 157, and it was assumed that the property would be in the mortgagee's hands, as appears by the language of the act of 1829, (§ 1, the mortgagee " shall deliver over the property," and § 2, " mortgagee, pledgee, or holder,") and of the note by the Commissioners to the Rev. Sts. c. 90, § 69, " when he finds his pledge taken from him." It follows that the mortgagee was assumed to know of the attachment as soon as it was made. The Revised Statutes (c. 90, § 78 *et seq.*) in their revision of the act of 1829 make the same assumption, notwithstanding the fact that in the mean time recording had been provided as a substitute for possession. Making this assumption, the revisers, instead of keeping the condition precedent that the mortgagee should be paid, contented themselves with providing that the attachment should be dissolved and the property restored, and that the attaching creditor should be liable for any damages, etc., unless the amount of the mortgage debt was paid or tendered within twenty-four hours after the mortgagee, pawnee, or holder had demanded payment and rendered a just and true account of the debt. Rev. Sts. c. 90, § 79. Commissioners' note to § 69. Certainly, after reading the acts and notes which we have cited, it is hard to believe that thus far it ever had been supposed that mortgaged chattels could be sold by the attaching officer, and it is quite incredible that there was any power to override by a sale the mortgagee's right to a return. Evidently it was expected that the mortgagee would be paid, or would receive back his pledge, in a very short time after the attachment.

Next came the act of 1844. St. 1844, c. 148, §§ 2-6. Gen. Sts. c. 123, §§ 67-71. Pub. Sts. c. 161, §§ 79-83. This provides for attachment of mortgaged property in the hands of the mortgagor, and allows the mortgagee to be summoned as trustee and questioned as to the *bona fides* of the mortgage. Under this statute the mortgagee has not the right to payment within ten days, but must await the determination of the validity of his mortgage and of the amount due upon it. *Martin* v. *Bayley*, 1 Allen, 381, 383. But when the amount is determined, the statute says, in terms, as the Public Statutes still say, that unless it is paid the attachment shall be void and the property

restored.  St. 1844, c. 148, § 3.  When the act of 1844 was passed, even if the existing provisions for sale applied to mortgaged property, this sweeping provision of § 3 plainly overrode them and governed every attachment made under the act.  But if that was its construction then, that is still its construction, notwithstanding its codification in the General Statutes and the Public Statutes.  *Wright* v. *Dressel*, 140 Mass. 147, 149.  It is under this act as codified that the plaintiff proceeded.

It may be said that our construction renders the right to attach mortgaged perishable property in this manner of little value, as it either takes away or makes impracticable and valueless the right to sell the goods attached.  Very possibly this is true.  But there is no justice in extending the hardships which a debtor may have to suffer at the hands of a creditor, to a stranger to the suit, who has a paramount lien on the property.  The first consideration is to protect him, and to that the right of attaching his mortgagor's property must yield.

The computation of interest on the notes after maturity at the rate stipulated before maturity, notwithstanding the attachment, was according to the decisions in this State.  *Union Institution for Savings* v. *Boston*, 129 Mass. 82.  *Lamprey* v. *Mason*, 148 Mass. 231, 235.          *Exceptions overruled.*