DANIEL BRANNON *vs.* JOHN C. HURSELL & another.

During the trial of an action against the maker and indorser of a promissory note, the counsel for the defendants withdrew his appearance for the maker, but the maker was not defaulted. *Held*, that the fact that the court under these circumstances permitted the plaintiff to prove the liability of the maker gave the indorser no ground of exception.

A note was signed A. B. It was sought to charge C. D. as a maker upon the ground that the signature A. B. was the signature of a partnership of which C. D. was a member *Held*, that the nature of the consideration of the note, and the statement made by C. D. at the time it was given, and papers signed or written by him, or by his procurement, and bearing upon the question of partnership, were admissible in evidence against C. D.

A plaintiff who has called a defendant as a witness may, by St. 1869, c. 425, contradict him, and show that he has made at other times statements inconsistent with his present testimony.

A defendant, the indorser of a promissory note, said, in reply to a written interrogatory filed to him, that he knew "the note had not been protested." *Held*, it was for the jury to decide whether he used the word "protested" in its technical meaning or in a popular sense as including demand and notice.

When a recovery is had upon a note bearing ten per cent. interest, the plaintiff is entitled to interest at the same rate till the time of verdict.

CONTRACT against John C. Hursell and Horace Humphrey on a promissory note of the tenor following:

$1500. Boston, March 14, 1870.

Four months after date I promise to pay to the order of Horace Humphrey fifteen hundred dollars. Value received with interest at 10 per cent. John C. Hursell.

[Indorsed] Horace Humphrey.

Both defendants appeared by the same counsel and filed a joint answer denying each and every allegation of the plaintiff's declaration.

At the trial in the Superior Court, before *Putnam,* J., the plaintiff sought to recover of the defendant Humphrey both upon the ground that the defendants were partners under the firm and style of John C. Hursell, and that the note was made by them as a firm, and upon the ground that Humphrey had waived the plaintiff's omission to make demand of payment upon the maker, and to give notice of non-payment to him as indorser.

During the course of the trial, and before Hursell testified, the defendants' counsel withdrew his appearance as to him, but he was not defaulted on the docket.

The plaintiff, as a witness in his own behalf, testified that the note in suit was given in renewal of an old note which was signed John C. Hursell and indorsed Horace Humphrey; that $800 was paid on the old note, and this note given to make up the balance; that the consideration of the old note was money lent to John C. Hursell; that Humphrey brought the note in suit to him after the old note was due, and said that all he could pay on the old note was $800, but that he would pay the rest in a short time, and mentioned four months; that Humphrey at this time said that he would see that witness got the money before that time; that he gave the note to witness at that time and said he wanted four months, but would pay it before it was due; and that the body of the note was filled in in Humphrey's handwriting. The foregoing evidence was admitted against Humphrey's objection.

The plaintiff also testified that about the time the note was due he lost his pocket-book containing the note in suit and other notes and some money, and called upon Hursell and told him the note was lost, and that Hursell said he would notify Humphrey of it. To the admission of this conversation between Hursell and the plaintiff the defendant Humphrey objected. The court admitted it only as affecting Hursell, but Humphrey subsequently testified that Hursell did see him and notify him of it.

The plaintiff further testified that after the note was due he requested Hursell to go and see Humphrey about it, and Hursell

said he would do so. Hursell said Humphrey was out of sorts, but would pay it by and by.

This evidence was, against Humphrey's objection, admitted, but only as affecting Hursell, and the court instructed the jury that this and other like statements made by Hursell were not evidence affecting Humphrey.

There was evidence on the part of the plaintiff tending to show that having found the note, and having it in his possession, he called upon Humphrey repeatedly the next week after its maturity, and subsequently during July, August, September and October of that year, and told him it was due, and asked for payment, and that Humphrey promised absolutely and repeatedly each time to pay it; that he said on one occasion that he did not see why Hursell did not pay it as there was money enough on the books.

A witness, called by the plaintiff, testified, against the defendant Humphrey's objection, that he was present on March 14, 1870, when the note was given, and that Humphrey said he had drawn the note on four months and would probably pay it before.

The defendant Hursell was called by the plaintiff as a witness, and testified on direct examination that when the note was given and before, he was in the flavoring extract business; that Humphrey was never a partner with him, and never engaged in carrying on business with him; that Humphrey was not to receive and did not receive any part of the profits of the business; and that Humphrey lent him money for which he was to pay him seven and three tenths per cent. interest, and no more. The plaintiff then, while Hursell was under examination by him, put in evidence a bill of sale from Humphrey to Daniel C. Gould, which is referred to in the opinion as exhibit A. Hursell appeared an unwilling witness and adverse to the plaintiff, and the plaintiff asked him if he had not stated, in letters which were produced and shown to him, that Humphrey was his partner, and if he had not stated that he and Humphrey had carried on business together. Hursell, in reply, said that he had so stated, but that it was not the fact; that he conveyed his stock to Humphrey in

September 1869, as security for a debt he owed him, and that he, Hursell, owned copyrights in his business and wanted a partner, and wanted to get some one to buy the stock of Humphrey, and that the letters were written in reply to newspaper advertisements inserted by one Gould; that Gould bought of Humphrey the stock, and became his, Hursell's, partner, December 1, 1869, and continued his partner till August 1870, and that he told Gould before he became his partner that Humphrey was not his partner and had no interest except in the goods; that the money he, Hursell, borrowed of the plaintiff, and for which the original note was given, he put into his business. The plaintiff, on the examination of Hursell, put in evidence a letter, which is referred to in the opinion as exhibit B, and which was written and signed by Humphrey with Hursell's knowledge, and also read in presence of the jury, and called the attention of the witness to an extract from articles of copartnership, signed by Hursell and Gould, dated December 1, 1869, which extract was as follows: " The above named parties [Hursell and Gould] have agreed to become copartners in business under the name and style of John C. Hursell & Co. in the manufacture and selling all sorts of flavoring extracts, to the said business belonging, in the same general manner as heretofore carried on by said Hursell and Horace Humphrey ; said business to be carried on at Boston, in the Commonwealth of Massachusetts, and to begin on the first day of December, A. D. 1869." To this evidence the defendant Humphrey objected, but the court permitted the plaintiff to use it to refresh the recollection of the witness, and to discredit him by contradicting him, but not to affect Humphrey unless it was known to and sanctioned by him.

The plaintiff introduced in evidence a paper referred to in the opinion as exhibit C, and also a letter referred to as exhibit D, but offered no direct evidence that this letter was written or signed by Humphrey; he claimed, however, that it was competent to go to the jury to be compared by them with admitted signatures of Humphrey, and if found by them to be written by him then to be evidence, and the court so ruled, against the defendant Humphrey's objection. Humphrey subsequently testified that he

knew of the letter being written, and that it was written for him by one Luke.

On cross-examination, Hursell testified that he did business always under the style of John C. Hursell & Co. both before and after he became a partner with Gould, and while he was a partner with him. There was no other evidence in the case as to the style under which the business was done at any time. The letter referred to in the opinion as exhibit B, Hursell swore was written by Humphrey, and signed by Humphrey, and Humphrey also admitted that he wrote and signed it. There was no evidence against Humphrey that Humphrey ever was a partner with Hursell, except the papers referred to in the opinion as 'exhibits A, B and C. Hursell also testified on direct examination that nothing was ever said in any conversation between him and Humphrey as to whether any demand for payment of the note had been made upon him. He also testified that payment of the note was not demanded of him at maturity, and that he signed the articles of copartnership between him and Gould in the way they were drawn, because Gould had got his own lawyer to draw them, and wanted him, Hursell, to sign them as they were written.

Humphrey was called as a witness in his own behalf, and testified that he never was a partner with John C. Hursell, that he never agreed to share any of the profits or bear any of the losses of the business, and never did receive any of the profits or bear any of the losses; that he lent Hursell eight thousand dollars at seven and three tenths per cent. interest, and afterwards took a conveyance of his stock of merchandise as security; that he sold it to Gould for about $3000, and the balance of his claim against Hursell never had been paid; that he kept no memorandum of the note in suit, and did not know or have any information whether payment of it was ever demanded of Hursell or not; that some time before it was sued he knew it was due, and he knew he had not been notified of its non-payment; that by Hursell's direction he wrote the letter referred to as exhibit B, and signed Hursell's name to it.

He testified that he had an interview with Hursell about the note soon after its maturity, and before the plaintiff saw him.

The plaintiff read to the jury the following interrogatory which had been filed by him to Humphrey as a party, and his answer to it: Int. " Did you, when the note matured, promise to pay it? What did you say at that time and at the subsequent times when the plaintiff called on you for it? Give the words, and all of them, you used at the different times the plaintiff called on you subsequent to the maturing of the note, as nearly as you can recall them. Did you not know that the note had not been protested at any or all of those times?" Ans. "I did not promise to pay the note when it had matured. I said nothing to the plaintiff at that time, not seeing him at that time. He called two or three times on me after the note had matured. I told him I had no money of John C. Hursell's, and that he must look to Hursell. He said he had been to Hursell, but could get no satisfaction. This was the substance of the conversation; I cannot recall the words used. I did know at every conversation I had with him that the note had not been protested."

There was no evidence in the case other than what is herein recited that Humphrey had any knowledge or information that payment of the note had not been seasonably demanded of Hursell. But Humphrey's counsel admitted that he knew that he had not been notified of the presentment and non-payment of the note.

The defendant Humphrey asked the court to instruct the jury that there was no evidence to warrant the jury in finding that the note in suit was the partnership note of Hursell & Humphrey; and that there was no evidence that if Humphrey promised to pay the note after its maturity, he knew or had information at the time of such promise, that payment had not been demanded of Hursell at the maturity of the note, and there being no evidence on this point the verdict of the jury must be for Humphrey. The court declined to give these instructions.

The court was asked by the plaintiff to rule, and did rule, that if the plaintiff was entitled to recover against Humphrey it was for the amount of the note and interest at the rate of ten per cent. per annum from the date of the note to the time of the verdict, and to this ruling the defendant Humphrey excepted.

The jury, by the direction of the court, reported their special findings. They found, in addition to rendering a general verdict, that Humphrey & Hursell were partners under the firm of John C. Hursell, and that this note was given in settlement of a partnership liability, and that Humphrey promised to pay the note, knowing that demand for payment had not been made on Hursell, and that notice of non-payment had not been made upon him, Humphrey; and the jury returned a verdict for the plaintiff against both Hursell and Humphrey for the amount of the note, and interest at the rate of ten per cent. per annum from the date of the note to the date of the verdict, viz.: $1839.50. The defendant Humphrey alleged exceptions.

*J. D. Ball*, for the defendant.

*A. A. Ranney*, for the plaintiff.

MORTON, J. We do not see, in the numerous exceptions taken by the defendant Humphrey, any reason for disturbing the verdict in this case.

1. Both defendants appeared by the same counsel, and filed an answer denying all the allegations of the declaration. At the trial the counsel withdrew the appearance for the defendant Hursell, but he was not defaulted. We do not think that the counsel for Humphrey could claim, as a matter of right, that Hursell should be defaulted, so as to preclude the plaintiff from the right to try his case in the manner in which he had prepared it upon the pleadings as they stood at the commencement of the trial. It was competent for the court to permit him to prove the liability of Hursell, and for this purpose the declarations of Hursell excepted to were admissible. The jury were carefully instructed that these declarations were not evidence affecting Humphrey.

2. The evidence of the consideration of the note in suit, and of the statements made by Humphrey, at the time the note was given, was admissible against him. It had some tendency to show his relation to the transaction, and thus bore upon the question whether he was liable as a maker of the note.

3. The plaintiff called Hursell as a witness, and he was entitled to contradict him, and to show that he had made at other

times statements inconsistent with his present testimony. St. 1869, *c.* 425. For this purpose the statement by Hursell in the articles of copartnership between him and Gould, to the effect that the business had theretofore been carried on by Hursell and Humphrey, was competent. This was a statement inconsistent with the present testimony of Hursell, who testified at the trial that Humphrey was never a partner or engaged in business with him. The circumstances of the statement offered were mentioned to the witness, and he was first asked whether he had made such statement; it was, therefore, admissible under the statute. ·

4. The exhibits marked A, B, C and D were admissible against Humphrey. They were all either signed or written by him, or by his procurement, and had some tendency to show that he was at one time a partner of Hursell.

5. Upon the testimony above referred to, the court properly refused to rule that there was no evidence to warrant the jury in finding that the note in suit was the partnership note of Hursell and Humphrey. But this question is not material. The jury have found specially, that Humphrey promised to pay the note, knowing that demand for payment was not made on Hursell at its maturity, and that notice of non-payment was not given to Humphrey as indorser. This finding, if it can be sustained upon the evidence, entitles the plaintiff to judgment against Humphrey, if his relation to the note was only that of indorser.

6. But the defendant asked the court to rule, that there was no evidence to show that Humphrey knew, when he made the promise to pay the note, that payment had not been demanded of Hursell at the maturity of the note. The court rightly refused this ruling. In his written answers to interrogatories proposed to him by the plaintiff, Humphrey states that he knew " that the note had not been protested." It was for the jury to construe this admission, and to decide whether he intended to use the word " protested " in its literal, technical meaning, or in a more enlarged and popular sense, including demand and notice. This statement, taken in connection with the admitted fact that Humphrey knew he had not received notice of non-payment, with the evidence tending to show that he was a partner with

Hursell when the original consideration of the note arose, and with the proof of his intimate relations with Hursell since, and of his unconditional promise to pay the note, was sufficient to justify the finding of the jury.

7. One question of practical importance, as to the amount of Humphrey's liability, remains to be considered. The rate of interest specified in the note is ten per cent., and the plaintiff claims interest at that rate since the maturity of the note. We are of opinion that he is entitled to recover it. The legal rate of interest is six per cent., in the absence of any agreement for a different rate ; but it is lawful for parties to contract to pay and receive a different rate, and when the agreement to pay a greater rate is in writing it can be recovered by action. St. 1867, *c.* 56. In the case at bar, the defendants have agreed in writing that the rate of interest for the use of the plaintiff's money shall be ten per cent. The plaintiff recovers interest, both before and after the note matures, by virtue of the contract, as an incident or part of the debt, and is entitled to the rate fixed by the contract. *Ayer* v. *Tilden,* 15 Gray, 178. *Morgan* v. *Jones,* 8 Exch. 620. *Keene* v. *Keene,* 3 C. B. (N. S.) 144. *Miller* v. *Burroughs,* 4 Johns. Ch. 436. *Exceptions overruled.*