Palmer, J.
This is an action brought 'to foreclose 'two mortgages securing a promissory note executed by Margaret Edmison and James Jamison, and the litigation between the parties occurs mainly upon the question of interest, the plaintiff claiming that ‘there should be annual rests in the calculation of the interest; that is, that as tbe note specifies that the interest should be payable annually; and further says, that if the interest is not paid when ■due such interest from that time shall’draw interest at the rate of 12 per cent, per annum, — that he is entitled to calculate interest ‘as stipulated by the note. The plaintiff offered in evidence the note in question, which is as follows:
$2500.00. Vinton, 1'owa, March 6th, 1879.
On the sixth day of March, 1881, for value received, we promise to pay Elijah A. Hovey or order, twenty-five hundred ($2500.00) dollars, with interest thereon at the rate of 12 per cent, per annum, payable annually at Sioux Palls, D. T.
Should any of the interest not be paid when due, it shall bear interest at the rate of 12 per cent, per annum, and a failure to pay any of said interest within thirty days after due, shall cause the whole note to become due and collectable *450 at once. It is also stipulated that should suit be commenced for the collection of this note, a reasonable amount shall be allowed as attorney’s fee and taxed with the costs in the suit.
Due, March 6th,-1881. Jambs Jamison,
P. O., Vinton, Benton Co., Iowa. Margaret Edmison.
No. 70.
Upon the above note were the following indorsements:
March 17th, 1880, received $150.00 on interest.
(Indorsed in pencil.)
Interest 10 per cent, after May 6th, 1881, for one year.
Plaintiff introduced in evidence two mortgages, each duly acknowledged and recorded, and each mortgage containing a stipulation for attorney’s fees, as follows: “And the said parties of “ the first part do hereby further covenant and agree that they “ will pay all taxes and assessments of every nature that may be “ levied upon said premises, before the same shall become delin- “ quent, and keep said premises thereon insured for at least $2,- “ 500.00 — loss, if any, payable to the mortgagee, as his interests “ may appear, and will also pay the sum of $75.00 as attorney’s “ fees in case of a foreclosure of this mortgage by reason of the “ nmi-performance of any of the conditions hereof by said parties “ of the first part; and in case default shall be made in the pay- “ ment of the said sum of money, or any part thereof, at the time “ or times above specified for the payment.thereof, or in ease of “ the nonpayment of any taxes as aforesaid, or the breach of any" “ covenant or agreement herein contained, then and in either case, “ the whole principal and interest of said note shall, at the option “ of the holder thereof, immediately become due and payable; and “ it shall be lawful in such case, for the said party of the second “ part, his heirs, executors, administrators or assigns, to grant, “ bargain, sell, release and convey the said premises with the ap- “ purtenances thereunto belonging, duly authorized, constituted, “ and appointed to make, execute and deliver to the purchaser or- *451 purchasers, his, her or their heirs or assigns forever, good, ample ■“ and sufficient deeds of conveyance in the law, and out of the “ moneys arising from such sales, after deducting all expenses il thereof, together with all sums paid on taxes, cost of advertising *£ or insurance on said premises and the said sum of -$75.00 attorney’s fees as aforesaid, to retain the principal and interest that ££ may be due on said note, rendering the surplus moneys, if any <£ there be, to the said parties of the first part, their heirs, exec- ■“ utors, administrators or assigns on demand.”
The court trying the cause, made the following findings of fact’ from the evidence:
I. That on the 6th of March, 1879, the defendants, Margaret Edmison and James Jamison, made their promissory note, bearing date on that day, in the words and figures following, viz.:
$2,500.00. Vinton, Iowa, March 6th, 1879.
On the 6th day of March, 1881, for value received, we promise to pay Elijah A. Hovey or order, twenty-five hundred dollars ($2500.00) with interest thereon at the rate of 12 per cent, per annum, payable at Sioux Falls, D. T.
Should any of the interest not be paid when due, it shall bear interest at the rate of 12 per cent, per annum, and a failure to pay any of said interest within thirty days after due, shall cause the whole note to become due and collectable at once. It is also stipulated that should suit be commenced for the collection of this note, a reasonable amount shall be allowed as attorney’s fee and. taxed with the costs in the case.
Due, March 6,1881. Jambs Jamison.
P. 0„ Vinton, Benton Co., Iowa. Mabsabbt Edmison.
II. That the said defendants, Margaret Edmison and Percival H. Edmison, to secure the payment of the principal sum and the interest thereon as mentioned in said note according to the tenor thereof, did execute under their hands and seals and deliver to the said plaintiff a certain mortgage bearing date the 5th day of July, 1879, and a condition for the payment of the said sum of twenty-five hundred dollars and interest thereon at the rate, and at the *452 times and manner specified in said note and according to* the conditions thereof, on the southeast quarter-of section number 13, in townshi-p 1'0-ly of range 49, in the county of Minnehaha, and Territory of Dakota.
Ill, That said mortgage was duly acknowledged and? certified4 so as to- entitle it to be recorded, and was afterward recorded on the 14th day of July, 1879, in- the office of the register of deeds-o-f the county of Minnehaha, D. T., in book u E of mortgages, on page 211.
TY. That the said defendants, James Ja-mfson and Margaret Jamison, to seeure the payment of the same said principal sum* and the interest thereon as mentioned in- said not® according to-the tenor thereof, did execute under their hands and. seals and deliver to the said plaintiff, a certain other mortgage bearing date-the 5th day o-f July, 18-79, and conditioned for the- payment of the-said sum of twenty-five hundred dollars and interest thereon at the-rate, and at the times and manner specified in said note and according to the conditions thereof, on the following described lands in Minnehaha county, D. T., viz.: Lot No. 18, of block No. 16, of J. L. Phillips’ Addition to Sioux Falls.
Y. ' That said mortgage was duly acknowledged and certified, so as to entitle it to- be recorded, and the same was afterwards, on the 14th day of July, 1879, duly recorded iu the office of the county register of deeds, of the county of Minnehaha, D. T., in book “ E ” of mortgages, on page 212.
YI. That the defendants, Margaret Edmison and Percival H. Edmison, covenanted and agreed in the said mortgage executed by them, that in case' of foreclosure of said mortgage, they would pay the sum of seventy-five dollars as attorney’s fees.
YII. The tbe defendants, James Jamison and Margaret Jami-son, covenanted and agreed in tbe said mortgage executed by them, *453 that in case of foreclosure of said mortgage, they would pay the sum of seventy-five dollars as attorney’s fees.
VT-TT- That no part of said principal or interest has ever been paid, except the sum of one hundred and fifty dollars paid March 17th, 1880.
TY. That at the time said note and mortgage were executed' there was a mutual mistake as to the amount of said note, which should have been in the sum of two thousand four hundred and eighty-seven and one half dollars, instead of two thousand five hundred dollars.
X. That on or about the sixth day of March, 1881, it was mutually agreed between the plaintiff and defendants, that the principal sum mentioned in said promissory note should,, from and after the 6th day of March, for the term of one year, bear interest at the rate of ten per cent, per annum, and that defendants should, have the use of it one year from said 6th day of March,. 1881, at said rate of interest.
XI. That said plaintiff is the owner and holder of said note and mortgages. .
XII. That no proceedings at law, or otherwise, have- been had-to recover the sums secured by said note and mortgages, or any part thereof.
XIII. That prior to the commencement of this action and about the 17th day of July, 1883, defendants tendered to plaintiff' as full satisfaction of said note and mortgages, the sum of $3,-456.85, at Sioux Falls, D. T., which the plaintiff' refused to-accept. ,
And as conclusions of law therefrom pro forma;
I. That there is now due and unpaid to the plaintiff upon said-note and mortgages the sum of $2,487.50 as principal, and interest on said sum at the rate of 12 per cent, per annum, and the interest *454 on each annual payment of interest at the rate of 12 per cent, per annum from ‘the sixth day of March of each year since the giving of said note — namely, March 6th, 1879, less the payment of $150 00 March 17th, 1881, amounting in all to the sum of $4,267.79; and that plaintiff is entitled to recover said sum.
II. The plaintiff is entitled to recover the sum of one hundred and fifty dollars as attorney’s fees as stipulated in said mortgages, and his costs and disbursements in this action.
III. That plaintiff is entitled to a judgment of the sale of the premises described in said mortgages to realize the aforesaid amount of $4,267.79, together with the aforesaid attorney’s fees, costs and disbursements; and that the defendants and all persons claiming under them, or either of them, subsequent to the commencement of this action, ■be barred and foreclosed of all right, claim, lien and equity of redemption in the said mortgaged premises and every part thereof, unless redeemed according to law, etc.
IY. That plaintiff is entitled to a judgment against the defendants, James Jamison and Margaret Edmison, for the amount of any deficiency that may arise after applying all the moneys arising from said sale on said judgment, if the sale of the said premises should not realize sufficient money to pay the full amount due on said judgment at the time of sale.
By the Court,
C. S. Palmer,

Judge.

Whereupon defendants’ motion for a new trial having been by the court denied and overruled, a judgment was duly entered in favor of plaintiff and against defendants, in accordance with the findings made by the court.
And now after the trial in this action and before judgment, comes the plaintiff and asks leave of the court to amend his said *455 complaint herein, in conformity to the proofs, in' the following, to-wit:
I. In the 8th paragraph of plaintiff’s complaint, in the 3d line and 8th line, to have the word May changed to March.
II. That the 12th paragraph of plaintiff’s complaint be changed to read as follows, viz.:
“ 12th. And the plaintiff further alleges that there is now due “ and unpaid to plaintiff upon said note and mortgages the sum “ of $2,487.50 principal, and interest upon said sum at the rate “ of 12 per cent, per annum, and the interest on each annual “ payment of interest at the rate of 12 per cent, per annum from “ the 6th day of March, of each year since the giving of said note, “ viz.: March 6th, 1879, less the payment of $150.00, above set “ forth.’’
Which motion was allowed, and to which the defendants duly excepted.
ASSIGNMENT OE ERRORS.
1. The court erred in findings Nos. 6 and 7 of plaintiff.
2. The court erred in permitting the amendment after trial of complaint.
3. The court erred in refusing to find that defendants made a tender and offer of payment on or about July 28th, 1883, of $3,-550.00.
4. The court erred in refusing to find that said principal note-was from and after March 6th, 1882, to bear interest at rate of 8 per cent, per annum.
5. The court erred in refusing to find defendants5, findings of facts Nos. Ill and V.
6. The court erred in conclusions of law numbered “ First,”' allowing interest upon each annual installment of interest; also in *456 conclusion second, allowing $150.00 attorney’s fees; also in conclusion third, decreeing judgment of a sale of the premises described in mortgages.
7. The court erred in refusing the defendants’ findings of fact, Nos. YIII and XI and XII; also in refusing the defendants’ conclusions of law.
€. The court erred in overruling defendants’ motion for new ■trial, and to correct findings.
Perhaps the most important question presented by the record in this case, is that raised by the sixth assignment in error, by which it seems the court below allowed interest on the sum found due upon the note, at the rate of 12 per cent, per annum, and interest on such annual unpaid sum of interest at the rate of 12 per cent, per annum, from the date of the note in question till the date of j udgment.
Section 1096, of the Civil Code of this territory, is as follows:
“ When a rate of interest is prescribed by a law or contract “ without specifying the period of time by which such rate is to ££ be calculated, it is to be deemed an annual rate.”
Section 1098: “1. The highest rate of interest which shall “ be lawful for any person to take, receive, retain, or contract for “ in this territory shall be 12 per cent, per annum, and at the same “ rate for a shorter time.”
“ 2. Unless within the above limitation there is an express “ contract in writing, fixing a different rate, interest is payable on “ all moneys at the rate of seven per cent, per annum, after they <£ become due on any instrument of writing except a judgment, i£ and on moneys lent- or due on any settlement of accounts from ££ the day on which the balance is ascertained, and on moneys re- ££ ceived to the use of another and detained from him.”
*457 Section 1102: “ Any legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until il the contract is superseded by a verdict or other new obligation.”
In view of the above provisions of our law, then, what effect must be given to the contract in this ease relating to the payment of interest? By the contract the interest was payable on the sixth •day of March, 1880; that is, the first interest which became due under the contract, was one year from the date of the note.
No portion of that interest was paid at that time. On the 17th day of March, eleven days after the first installment of interest became due, the defendant paid $150.00 as interest. No further sums either as principal or interest .were paid upon said note previous to the commencement‘of this action.
The court below after applying- the $150.00 in part payment of the first year’s interest, allowed annual interest upon the principal sum, and also allowed annual interest or annual rests, in computing the interest upon the unpaid installments of interest from the time they beeame due till the time of judgment. *
By so doing it is strenuously urged the court erred, and it is insisted that a court exercising its chancery powers will not enforce a contract for the payment of interest upon interest after the same becomes due; and many cases English and early American are cited in support of this doctrine.
Perhaps the first question here presented is, what were the rights and liabilities of the parties at the close of the first year, with the interest of that year unpaid? Clearly a right to maintain an action to recover it, on the part of the creditor, and a corresponding liability on the defendant to pay the same.
The plaintiff was a resident of, and the contract was executed in Yinton county, Iowa. The defendant and security were located in *458 Minnehaha county, Dakota. The parties thus separated, one-without the jurisdiction of this court, see fit for somepurpose known, to themselves,to embraee in their contract that interest should bear the same interest per annum as- the principal, i£ it was not paid when, due by the terms of the contract..
No reason seem-s to exist why the parties should not do just, what they evidently intended to do here, viz.,, make the interest upon this debt payable annually, although the principal debt was-not due for two years;, but some of the authorities cited by respondent’s counsel, go so far as to deny the parties the legal right to enter into- a contract of this character.. We conclude, however,, from a large preponderance -of the authorities, that |298.50, the-interest upon the principal' sum for one year, was due and payable-on the 6th day of March, 1880-. This sum belonged to the plaintiff at that time by the terms of the contract. But. it is insisted that if said first year’s interest was not paid when due, no contract concerning interest upon said sum of |298.50 would be-binding and enforceable in this form, if embraced in the original contract. It is difficult to find a satisfactory reason to assign why,, if the parties kept within the limits prescribed bylaw, they should not be permitted to m-ake any arrangement concerning the payment of the interest accruing within the life or period covered by the written contract.
The note in question was payable in two years from its date, with interest at twelve per cent, per- annum, payable annually, with a further provision, that “ should any of the interest not be paid when due, it should bear interest at the rate of twelve per cent, per annum.'7 This was such a cbntract as the parties had a right to make, and was binding upon them at all times, till by the terms of the contract the whole debt became payable. This is in accord with the rule adopted by the court below', as far as the first two annual installments of interest are concerned. Interest was *459 allowed on the first year’s unpaid interest (after ■deducting the first .payment) to the date of the judgment. The same was dene with the second year's unpaid 'interest.
In this it is seriously insisted the court -erred; and it is argued ithat this basis of computing the interest is “ compounding,” and that courts of equity will not favor or enforce such contracts,- and ■our attention has been ealled to many chancery decisions tending to establish this doctrine. But was the rule of computation'adopted by the court below " compound interest?”
“ The words compound interest mean interest added to the prin- ■“ cipal as the former becomes dire, and thereafter made to bear ■“ interest”’ -See. 2127, Civil Code.
Simple interest is the straight interest computed on the principal sum from the time when by the terms of the contract interest is to commence, to the time of payment or judgment. Neither of these methods seems to have been adopted by the court below in computing the interest on the note in suit, but a middle course was adopted and the interest was figured on each year’s unpaid interest from the time it became due to the date of tire judgment and at the rate provided by the terms of the contract This, we think, was annual interest It will be borne in mind that the rate of interest provided by this contract is within the limits provided by law. ¥e have, therefore, had less occasion to endeavor to -devise means and authorities wherewith to meet the “ genius of rapacious creditors” than to strive to give to this contract just such force and meaning as the parties intended for it at the time of execution; and it must be admitted that the courts not only of this country but of England, have failed to- find any common ground upon which all can stand, or any universal rule which should govern all speeies of contracts for the payment of interest and applicable to all conditions of our country. Hoyle v. Paige, cited by counsel for appellant as conclusive upon the question of *460 interest accruing after the principal debt becomes due, was a case where-in the absence of any law authorizing it, the parties contracted and it was “ expressly agreed that in ease the interest was-not paid at the end of each year said interest should become principal and draw interest as principal/’ And this was a contract payable in one year, and the learned Judge attempts to discriminate between such a contract and one where by the terms of the-contract payments of interest would fall due by themselves previous to the time of payment of the principal sum. But the court in that case does hold (and we think contrary to the great weight of authority}- that simple interest only should be computed, notwithstanding the contract called for annual interest. The learned-judge seeming to -be willing to allow th-at State to stand committed to the principle adopted by Chancellor Kent in the early chaneery case of Connecticut v. Jackson, 1 Johns. Chancery, 18, without question,-'rather than accept what seems to us to be the better rale as 1-aid down by most of the other courts- of the country.
Vermont was early committed to the same rule, following Che-lead of the early Massachusetts cases and the chancery case cited above. And a very eminent jurist (Isaac E. Eedfield) in discussing this question, says: “ It has long been settled in this State, “ doubtless upon the authority of the early cases cited from Massa- “ chusetts, that the parties may make the interest payable at any “■ time short of the time fixed for the payment of the principal “ sum. In such case if the interest is not paid when it falls due, “ suit may be immediately brought for the sum due, and a re- “ covery had for that with interest upon it from the time it fell “ due, by way of dam-ages for the delay. The interest is thus w treated as a séparate installment of the principal sum. In such “ case, if no suit be brought until the whole sum be due, the inter- “ est will be computed on the several successive installments of *461 44 interest as so many distinct canses of action blended in one suit. 44 But the interest upon the interest is allowed in these cases by 44 way of damages for the delay of payment and not as any portion 44 of the stipulated interest.”
Thus it will be seen to what extremity one of the most eminent jurist of our country was forced in order to give a correct, reason* able and legal effect to a fair contract of parties, and at the same time keep within a rule previously adoped as the settled policy of the courts of his native State.
This basis of reasoning being so manifestly a distinction without a difference, and the legal effect being to compel a party to pay annual interest upon unpaid installments of interest, although it was called damages instead of interest; that the legislature in 1866 enacted a law providing a rule governing such cases which would seem to be more in accord with the better principles and reason, and in terms enacted the rule adopted by the court below in this case: Section 1998, Revised Laws of Vermont.
Like reasoning characterizes many, if not most of the early cases cited by counsel for respondent. And the words of Pearson, C. J., in Bledsoe v. Bixon, 69 N. C. seem pertinent. After examining: those cases and weighing the reason and logic used by the courts-therein, the learned Chief Justice says: 44 Interest is the price 44 agreed to be paid for the use of money; rent, is the price agreed 44 to be paid for the use of land; hire is the price agreed to be 44 paid for the use of a horse or other article of personal property; 44 call it interest, rent, or hire, it becomes a debt at the time the 44 party promised to pay it, and from that time he is using the 44 money of the creditor, or of the landlord, or of the bailor, and 44 ought to pay for the use of it, unless he be allowed to take ad-44 vantage of his own wrong in not making payment at the day. <c * * * rule being, that when a certain sum of money is 44 to be paid at a specified time, on failure to pay, the party is to *462 ££ be charged with interest. * * * In our opinion the doe- “ trine that when there is an agreement set out in the note for the “ payment of interest annually, or semi-annually, the maker is ££ chargeable with interest at the like rate upon each deferred pay- “ ment of interest in like manner as if he had given a promissory note for the same amount, is sound on principle. By this mode “ of computation, compound interest is not given. But a middle ££ course is taken between simple and compound interest; in me- ££ diam viam tutissimus ibis. By computing interest in this way “ effect is given to the stipulation to pay interest at fixed times; “ whereas if simple interest be computed no effect whatever is given to the stipulation in regard to interest, and the court ££ assumes the power to expunge it as surplusage, although it is ££ manifest that the parties intended it to have some effect.”
The principal of the rule adopted by the court below as enunciated by the learned court above quoted, will, upon careful exam • ination, be found not to be seriously in conflict with the doctrine promulgated by the courts in most of the cases 'cited by counsel for appellant The leading case cited by counsel, Young v. Hill, 67 N. Y., was an action upon an account stated. The annual interest upon one of the items of the account was computed and added to the principal sum each year, and such increased sum was then treated as a new principal, and interest computed thereon. This was done each year from 1817 down to 1870, and so reported • each year by the intestate of defendants to the original plaintiff. Thus it was claimed to be an account stated, or an agreement to pay what was clearly compound interest when the original contract was for annual interest. A divided court reaffirm the doctrine of Connecticut v. Jackson, ante, and the courts of that State may be fairly said to be committed to that rule. But as has already appeared the interest computed on the notes in the case at bar, was not compounded, but figured at simple interest from the time they *463 became due; and with this in mind the language used by the learned Judge, who spoke for a majority of the court, becomes significant — at least in distinguishing the case at bar from Connecticut v. Jackson. Allen, Judge, says: “ An agreement to pay “ simple interest upon the several installments of interest as they u become due, and a computation based upon such agreement ap- “ plying the payments as made, first to the payment of interest ££ until all was paid, might not be unreasonable or inequitable. u The result would have been far different from that insisted on.” The identical “ agreement ” above referred to, we find in the contract in the case at bar, and the method of computation which would distinguish a case from the one the learned Judge was then deciding, seems to have been just the method adopted by the court below.
Again, the case of Leonard v. Villars, cited by appellant’s counsel, is another case of compounding the interest where no provision for the payment of interest upon interest appears in the contract. Perhaps no case to which our attention has been called is more exhaustive of this whole subject' of interest than the case of Union Institution for Savings v. City of Boston, cited by appellant’s counsel; and as many of the authorities cited upon brief of counsel are not accessible to us, we desire to call attention to the discussion of this subject by the various courts as appears in a very exhaustive opinion delivered by Gray, Chief Justice, in that case.
“ In Price v. Great Western Railway, 16 M. & W., Baron “ Parke said that the reason why, under a mortgage deed, where- !£ by interest is payable up to a certain day, interest beyond that ££ day might be recovered as damages, was because the deed shows ££ the intention of the parties that it should be a debt bearing in- ££ terest; and added: £ The jury give it as damages for the deten- ££ tion of the debt.’”
*464 This seems to have been the leading case which controlled and guided the earlier decisions in this country, as appears from those above cited. Again: “In Morgan v. Jones, 8 Exch., 620, the “ owners of a vessel mortgaged it as security for a debt, with a “ proviso for redemption on payment of the principal and interest “ at the rate of ten per cent, in six months, but without any provi- “ sion for payment of interest after that time. The principal not “ being paid then, it was held by Chief Baron Pollock and Barons “ Parke, Platt and Martin, that the mortgagee was entitled to in- “ terest at the same rate until payment; and Baron Parke said: “ It was a sale of a chattel, redeemable on a certain day; then, if “ the mortgagors do not avail themselves of that provision, the “ same rate of interest continues payable.”
It will be observed the decision in this case, as well as the others to be considered presently, are founded upon and construe contracts which contain no provision except the general one to pay interest annually; and this is distinguishable from the ease at bar, which expressly provides in addition to the general agreement for interest annually, that should any of the interest not be paid when due, it shall bear interest at the rate of twelve per cent, per annum. And all attempts to arrive at the intention of the parties in the cases cited are made without the aid of the clear expression of the intention as manifested by the parties in the case at bar.
Again, in “ Keene v. Keene, 3 C. B., (N. S.) 144, an action by “ an indorsee against the drawer of a bill of exchange for 200 “ pounds, payable in twelve months, with interest at the rate of “ ten per cent, per annum, was referred to a master, who allowed “ ten per cent, after, as well as before, the maturity of the bill.” This was alleged as an error. Mr. Justice Willes said: “ Until “ the maturity of the bill, the interest is a debt; after its maturity, “ the interest is given as damages at the discretion of the jury.” * '* * Chief Justice Cockburn said: “I see no ground for *465 “ referring this case back to the master as prayed. He has, as he well might, given in the shape of damages the rate of interest “ the parties themselves had contracted for. I think he has done “ quite right.” Mr. Justice Crowder said:- “ I am of the same “ opinion. The master would, I think, have acted very unreason- “ ably if he had not assessed the damages by the rate which the parties had stipulated as to the value of the money,” And Mr. Justice 'Williams concurred.
Again: “ In a later case, Lord Justice Amphlett considered it u to be clearly established by the previous decisions, that in the “ case of a mercantile security it is to be supposed that the parties “ intended interest to run on at the old rate if the money was not “ paid at the date; and, so in the redemption of mortgages, al- “ though the day for payment has passed, and there is no provi- “ sion with the creditor for payment of interest after that day, the “ court will assume that interest is payable after the day at the “ same rate as before; and that, although what has to be paid may “ technically be called damages, they are damages of a peculiar “ kind, for it would not be left to a jury to regulate the amount; “ but the jury would be directed, as a matter of law, to find dam- “ ages of the same amount as the interest which would have been “ payable if the promise had extended over the period: Gordillo v. Wegeulin, 5 Ch. D., 287, 303.”
Again, the learned Chief Justice Gray continues: “ In Brannon v. Hursell, 112 Mass., 63, it was held in an action on a “ promissory note, payable in four months, with interest at ten per “ cent., that interest shall be computed at that rate, not merely “ to the maturity of the note, but to the time of verdict; and the “ language of the court in that case, ; that the plaintiff recover “ interest both before and after the note matures by virtue of the “ contract as incident or part of the debt,’ might well be modified *466 “ to say that the interest after breach of the contract, though not “ strictly recoverable as part of a debt but rather as damages, and “ ordinarily to be measured according to' the intention manifested “ by the contract,, by the standard thereby established."
“ Before the decision in Brannon v. Hursell” the learned Judge continues, “ the rule there declared had been established in “ Indiana, California, Texas, New Jersey, Illinois, Wisconsin,, “ Iowa, Nevada and Tennessee. It has since been affirmed by “ decisions of the highest courts of Ohio, Michigan and Virginia. “ In Connecticut, the law seems formerly to have been considered “ as settled in accordance with these decisions; and, although “ some recent dicta have a tendency to explain away the grounds “ assigned in the earlier judgments, there is no adjudication to the “ contrary. The earlier decisions in New York support the same “ rule, both as to mortgages and as to ordinary debts But in “ the light of later cases the question may, perhaps, be considered “ an open one in that State."
Continuing, the learned Judge says: “Two observations may “ be made on the judgments which are opposed to the decision in “ Brannon v. Hursell. 1st: They admit that the intent of the “ parties, if expressed with sufficient clearness in their contract, “ will govern the rate of interest to the time of judgment: “ Brewster v. Wakefield, supra; Pearce v. Hennessy, 10 R. I., 227; Capen v. Crowell, 66 Maine, 282; Paine v. Caswell, 68 Maine, 80; Gray v. Briscoe, 6 Bush., 687; Young v. Thompson, 2 Kan., 83." * * * * *
“ We are constrained, with great respect for those who take a “ different view of the subject, to say that the rule established by “ the adjudication i n Brannon v. Hursell, appears to us to best “ accord with the apparent intention of the parties, with the usage “ and understanding of men of business, with the weight of legal *467 •“ reasoning and authority, and with the principles of -equity that ■“ govern the enforcement and redemption mortgages.”
The case of Brewster v. Wakefield, 22 How., 118, was an appeal from the .Supreme Court of the Territory of Minnesota, and •came before the Supreme Court of the United States before the •admission of Minnesota into the Union as a State. The notes in .question in that suit were given by Brewster, whereby and in one of them, he promised to pay, twelve months after date thereof, to the order of Wakefield, the sum of $5,585, with interest thereon at the rate of 20 per eent. per annum from the date thereof; another note for $2,000, payable in twelve months, with interest at the rate of two per cent, per month from date; another note of $1,000, with interest at the rate of two per cent, per month. Appellant, by his counsel, objected to the allowance of more than the legal rate of interest, seven per cent., after the notes became due and payable. Wakefield, on the contrary, claimed the interest should be allowed at the rate mentioned in the notes up to the time of judgment. The territorial court rendered judgment in accordance with the claim made by Wakefield. The case passed to the supreme territorial court, and finally to the Supreme Court of the United States. The statute of the territory governing this subject, section 1, was as follows:
“ Any rate of interest agreed upon by the parties in the contract, specifying the same in writing, shall be legal and valid.”
Sec. 2. “ When no rate of interest is agreed upon of specified “ in a note or other contract, seven per cent, per annum shall be the legal rate.”
It will be observed that there is no stipulation in relation to interest after the notes became due in case the debtor should fail to pay them, in that case; and Mr. Chief Justice Taney, in delivering the opinion of the court, says: “ If the right of interest de- *468 “ pended altogether on contract, and was not given by the law in “ a case of this kind, the appellee would be entitled to no interest “ whatever after the day of payment. The creditor is entitled to “ interest after that time by operation of law and not by any pro- “ vision in the contract; and in this view of the subject we think “ the territorial courts committed an error in allowing after, the “ notes fell due a higher rate of interest than that established by “ law where there was no contract to regulate it. Nor is there “ anything in the character of this contract that should induce the “ court by supposed intendment of the parties or doubtful infer- “ enees to extend the stipulation for interest beyond the time “ specified by the written contract. The law of Minnesota has “ fixed seven per cent, per annum as a reasonable and fair com- “ pensation for the use of money, and where a party desires to ex- “ tort from the necessities of the borrower more than three times “ as much as the legislature deems reasonable and just, he must u take care that the contract is so written in plain and unambig- “ uous terms.”
The contract in the above case was evidently considered by the court as unconscionable, unjust, unfair and extortionate; no other view could reasonably be taken by the court of such a contract relating to interest so largely in excess of the legal rate as established by the laws of Minnesota as being a fair and just compensation for the use of money. Upon this ground and for these reasons any court would be justified in such a conclusion; and this clearly distinguishes the case of Brewster v. Wakefield from the case at bar. No speculation is required by this court to ascertain the meaning of the parties to this contract, for it is clearly set forth by the contract itself. The character of the contract is not open to criticism as was the one in the case last above quoted, because the laws of the territory expressly provide that the sum herein contracted to be paid is a just and lawful compensation for *469 the use of money. Again in 1877 the Supreme Court of the United States in passing upon this identical question in Cromwell v. County of Sac, 96 U. S., page 61, had occasion to refer to the case of Brewster v. Wakefield, and used this pertinent language:
“ That case came from a territorial court and arose under a “ statute which allowed parties to agree upon any rate of interest “ however exorbitant, and only prescribed seven per cent, in the absence of such an agreement; this court, bound by no adjudi- “ cation of the territorial court, and looking with disfavor upon “ the devouring character of the interests stipulated in that case, “ gave a strict construction to the contract of the parties.”
And again speaking of the case then before them, Mr. Justice Field saysr “ By the settled law of Iowa as established by re- “ peated decisions of her highest court, contracts drawing a spec- “ ified rate of interest before maturity draw the same rate of “ interest afterwards. There are, however, conflicting decisions, “ but the preponderance of opinion is in favor of the doctrine that “ the stipulated rate of interest attends the contract until it is “ .merged in the judgment. The statutory rate of six per cent, in “ Iowa only applies in the absence of a different- stipulated rate. “ As the judgment in the case of a stipulated interest in the con- “ tract must bear the same rate, it could not have been intended “ that a different rate should be allowed between the maturity of “ the contract and the entry of judgment.”
It»will be observed the provisions of the statute of this territory upon this subject are almost identical with those above quoted from the statute of Iowa, and in that case the court was called upon to ascertain the intention of the parties to a contract with reference to the rate of interest which the contract must bear by’ intendment, while in the case at bar the intention is expressed; *470 and in that case interest upon interest was disallowed, because, as the learned Judge says, “ that can be allowed only at the rate of six per cent, under the law of Iowa,” and upon this point the law of Dakota seems to be different. Section 1102, Civil Code, provides: “ Any legal rate of interest stipulated by a contract, remains chargeable after a breach thereof as before, until the contract is superseded by a verdict or other new obligation.”
What was the interest stipulated by the contract in the case at bar? Twelve per cent, per annum, payable annually, and if any force whatever is to be given to the section of our code above quoted, it is difficult to conceive by what theory or basis of reason- ' ing a different rate can be computed than a twelve per cent, rate, payable annually.
The latest consideration of this question by the Supreme Court,, of the United States, which I have been able to discover, is the case of Holden v. The Trust Co., 100 U. S., 72. That case went up from the District of. Columbia. The contract was for the payment of $5,000, payable four years from date at the Bank of Washington, with interest at the rate of ten per cent., payable semiannually. The rate of interest in the District of Columbia was six per cent, per annum upon all moneys due where there is no contract , upon the subject. Second — parties may stipulate in writing for ten per cent, per annum or any less rate. Third — if more than ten per cent, is taken upon any contract, all the interest taken may be recovered back if sued for within a year. The court say: “ The rule heretofore applied by this court, under the cir- “ cumstances of this case, has been to give the contract rate up to “ the maturity of the contract, and thereafter the rate prescribed “ for cases where the parties themselves have fixed no rate:” Citing Brewster v. Wakefield, 22 Howard, 118; Burnhisel v. Firman, 22 Wall., 170.
*471 “"Where a different rule has been established, it governs, of “ course, in that locality. The question is always one of local law. “ Here the agreement of the parties extends no further than to “ the time fixed for the payment of the principal. As to every- “ thing beyond that, it is silent. If the payment be not made “ when the money becomes due, there is a breach of the contract, “ and the creditor is entitled to damages. Where none has been “ agreed upon, the law fixes the amount according to the stan- “ dard applied in all such cases. It is the legal rate of interest “ where the parties have agreed upon none, [f the parties meant “ that the contract rate should, continue, it would have been easy “ to say so. In the absence of a stipulation, such an intendment “ cannot be inferred.”
The ruling, as well as the language of the court in the above case, is significant. The rule, the court there say, “ Has been to “ give the contract rate up to the maturity of the contract, and “ thereafter the rate prescribed for cases where the parties them- “ selves have fixed no rate.”
No mistake can be made in considering the contract in.question; the parties themselves have not left it for the court to presume or find by intendment what was to be the contract rate after the principal sum became due. Again the court say: “ Here-the- agreement of the parties extends no further than to the time fixed for the payment of the principal.” Quite the reverse is the case before us. The contract here specifies in plain and unequivocal terms as to the intention of the parties beyond the time when the contract became due. Again the court say: “ Where none has been agreed upon the law fixes the amount according to the standard applied in all such cases.” In the case at bar the agreement is explicit. Again the court say: “It is the legal rate of interest where the parties have agreed upon none.” The contract in the case at bar provides for a legal rate by express agreement of the *472 parties after as well as before the contract became due. Again the court say: “ If the parties meant that the contract rate should continue, it would have been easy to say so.” The case at bar exemplifies the truthfulness of the language of the learned'Justice Swayne upon this point. They recognize the ease with which their understanding and agreement could be impeached in the contract and govern themselves accordingly, leaving for this court no question of possible intendment, no doubt or uncertainty as to what the agreement of the respondent was at the time this Contract was made, not only with reference to the interest accruing before the maturity of the note, but all that might accrue subsequently as Well, only imposing upon us the burden of judicial sanction upon a contract plain and unequivocal in terms, and as plainly and unequivocally authorized by statute.
All of the cases above cited have turned, as they necessarily must upon the term of the particular contract under consideration, in view of and in the light of the statute of the States governing them, and in none of them has the attempt been made to change, alter or modify the express terms of the contract, and only in cases where.the contracting’ parties have broken away from the limits prescribed by law, and entered into agreements which the courts have had no difficulty in finding were unconscionable, unjust and extortionate, have-the courts attempted in the least to piodify by judicial sanction the expressed will of the parties.
If the intention of the parties to this contract was uncertain, either as respects the rate of interest before or after maturity' of the note in question, the case of Spencer v. Maxfield, 16 Wisconsin, 185, might be of greater value than it now is in determining the question of the intendment of parties in contracts of this character. That was a foreclosure of a mortgage given to secure a promissory note, which was as MIqws : “ $800. Eor value re- “ ceived, I promise to pay Clayton Lemans or bearer, eight hun- *473 “ dred dollars, three years from the fifteenth day of April, 1857, “ with the interest at 12 per cent, after the first day óf June, 1857. “ This note running with mortgage of same date.
(Signed.) “ J. H. Wycicoff.”
Nothing was said in the note or mortgage concerning the interest accruing subsequent to maturity of the note. The court below computed the interest at 12 per cent, before and after maturity alike, applying, as was done in this case, certain payments upon interest already accrued. The learned Judge, .in speaking for the court in that decision, says: “ It is claimed that the con- “ tract is silent as to interest after maturity, and that it is con- “ trolled by the law which regulates the rate of interest when none “ is agreed upon by the parties. It appears to us that this is not “ the proper interpretation of the contract. The statute in force “ at the time the note was executed, permitted parties to contract “ for any rate of interest not exceeding twelve per cent, per annum: “ Ch. 192, Laws of 1851. And we have no doubt but the general “ understanding among business men has been, that notes in the “ form of the one under consideration draw interest at the rate of “ twelve per cent, after as well as before maturity. Such, we be- “ lieve, to be the construction placed upon these contracts by the community, and we think it is the correct one. And therefore “ we have no hesitation in saying, where the parties have confined “ themselves to the rate per cent, allowed to be contracted for, “ that the presumption is that they agreed and understood that the “ interest should be charged on the debt after maturity, the same “ as before. This, we think, is the implied agreement or under- “ standing of the parties to the contract.” * * *
“ This, we think, is the ordinary presumption arising from such “ contracts. It seems hardly consistent with reason to say, that *474 “ when parties have contracted for a higher rate of interest than “ the law allows, in the absence of all special stipulations upon the “ subject, that they intended that this rate should continue only “ until the debt becomes due, but that after default the general “ statute should apply and reduce that rate. This is not a fair or “ rational construction of such transactions. We are aware that “ the case of Brewster v. Wakefield, 22 How. U. S., 118, so holds. “ JBut what influence the most unconscionable rate of interest “ charged on the loans in that case had, in leading the court to “ give the contracts a strict construction, it is impossible to say. w The Chief Justice says that there is nothing in the character of “ the contract that should induce the court, by supposed intend- “ ment of the parties or doubtful inferences, to extend the stipu- “ lation for interest beyond the time specified in the written con- “ tract. But in this case the rate of interest is not unconscionable “ or severe, and is one very frequently contracted for in making “ loans.”
To the same effect is a very recent decision rendered by the Supreme Court of Indiana: Shaw v. Rigby, 84 Ind., 375.
It will be observed that in nearly every instance the courts in the above cases were called upon-to construe and give effect to contracts providing only for the payment of “ annual interest.” If these courts of high authority reach such conclusions from a consideration of contracts of that character, there seems to be little occasion in the light of reason or precedent to misunderstand or misconstrue the contract in question, providing in terms that any interest not paid when due, should bear interest at the rate of twelve per cent, per annum.
It will not do in the light of section 1102, of the Civil Code, ante, to say that such rate is unconscionable or inequitable. This court will not attempt to usurp the functions of the legislative *475 branch of the government, neither will it be well to attempt to anodify or abridge the meaning of a written contract, if the parties making the same had the clear legal right to execute it, and did so in unmistakable terms. And while it might be in the line of many high authorities to hold as in one of the cases above cited, that the interest upon the unpaid installments of interest may be treated as sepai’ate causes of action and allowed as damages in the main action, yet in view of the express provisions of this contract, it seems a more consistent course to give the force and effect to the written instrument which the parties clearly intended for it.
The objection made by the appellant’s counsel, that the computation was unjust and inequitable, is sufficiently answered by reference to the contract, and the debtor could easily have avoided any injustice in this direction by complying with its terms, and paying the debt as agreed.
Entertaining the view then, that the clear unequivocal intention of the parties to this contract was to provide for the payment of interest upon the installments of interest which should be unpaid and withheld by the appellant, we find no error in the method of computation adopted by the court below on.the unpaid installments of interest which accrued previous to the time of maturity of the principal sum. After the debt became due by the terms of the contract, then the principal and interest were due at all times till payment; but unpaid interest accruing after maturity, would not be subject to the annual rest rule which obtained before the maturity of the notes. The sum tendered by the appellant not being- sufficient in amount to cover the' principal and interest then due, was insufficient for any purpose, and therefore in accordance with the law laid down by this court in Farmers National Bank of Salem v. Rasmussen, 1 Dak., 60, the respondent was entitled to the attorney’s fees when suit commenced as allowed by the *476 court below. The plaintiff below seasonably moved and was allowed by the court to amend his complaint to meet the evidence. The nature of the amendment as appears from the““ record, was clearly permissible under section 142, C. C. P., of this territory.
The only remaining question presented by the record, appears by the tenth finding of fact by the court below as appears, ante. It seems that about the 6th day of March, 1881, and about the time the principal of the note had fallen due, and before any part of the interest upon the principal sum had been paid, the appellant and respondent agreed upon an extension of the time of payment of the note, upon the appellant’s agreement to pay the rate of ten per cent, interest for that year. This extension of time and reduction of rate was effected by correspondence, but the court found such agreement existed, but that no interest was ever paid under it, and that nothing has ever been paid as interest on the notes thát has accrued since said contract was entered into.
This action was instituted in 1883, and in computing the interest upon the notes in question the court below, regardless of the ten per cent, contract, allowed the interest at the rate provided in the notes for the year ending March, 1882, the same as the preceding year. This is assigned as error.
It will be observed that the agreement entered into between the parties effecting a reduction in the rate of the interest for one year was made about the time the debt became due, by the terms of the original contract. No new evidence of debt was executed at that time, and the manifest intention of the parties seems to have been not only to allow the old contract to remain, but to expressly treat it as the basis of indebtedness to which the agreement of March, 1881, related.
In fact nothing in conflict with this idea appears by the record in this case. The stipulations of the note therefore being in no *477 sense annulled, but only suspended, what were the rights of the parties to the contract under the ten per cent, agreement? Can it be said the respondent was bound by the terms of that subsequent contract without any corresponding liability on the part of-the appellant to perform his part of it? It was an agreement affecting the rate of interest for one year upon the notes in question. The principal of the notes was then due. No arrangement seems to have been made concerning the payment of the principal sum; it was left for payment at the end of the second year, or a subject for further stipulation or agreement for its continuance.
The advantage to be gained by the .appellant under the agreement of reduction was open to him by his keeping his part of the contract and paying the interest at the reduced rate at the end of the year when it became due. This he failed to do. No further contract concerning the principal sum or subsequent interest was entered into between the parties; the original evidence of indebtedness was allowed to remain; the original contract and evidence of debt was left therefore in full force and is the subject of this action. The benefits accruing to the appellant by virtue of the agreement to reduce the interest, were lost to him by his failure to meet the terms of that agreement at the time specified. Sufficient appears from the record in the case to satisfy us not only that the expectations of the parties were, that if the reduction was made thffi interest should be paid at the end of the year, but the clear intention of the parties seems to have been rather that the reduced rate was only to be considered and held operative and of binding force between the parties only upon the payment of the interest at the agreed rate of ten per cent, at the time when, by the terms of the agreement, said interest should become due; and not that it was the understanding or agreement that the indebtedness should continue at the reduced rate, whether or not the interest was paid when it became due.
*478 "We conclude, therefore, that the appellant having failed to perform on his part the terms of the agreement of March, 1881, by-paying his interest at ten per cent, and compelling the respondent to institute these proceedings upon the original contract, he has forfeited all his rights under and by virtue of that agreement, and should be bound by the terms of the original contract, which is the basis of this action.
Judgment is therefore remanded, with instruction to the District Court that the judgment be modified in accordance with the views above expressed.